ANDERSON *et al.* v. SIMPSON *et al.*

1. **Statute of limitations: PAROL LICENSE: POSSESSION.** A parol license to dig for and remove mineral from premises, under which the licensee entered into the possession, and which is also established by the evidence of the licensor, is valid within the meaning of the statute of frauds.

2. **New trial: DECREE: EVIDENCE.** The sufficiency of evidence to sustain a decree considered and determined.

3. **Statute of frauds: MINING LICENSE.** A parol license to mine should be accompanied by possession to exempt it from the statute of frauds.

*Appeal from Dubuque District Court.*

TUESDAY, DECEMBER 11.

This is a suit in equity, to enjoin the defendant from mining lead ore upon certain premises known as the north part of mineral lot number thirty-one in Dubuque county, and to settle and determine the plaintiffs' right to mine thereon. A temporary injunction was granted on the filing of the petition. The testimony was all taken in writing, and the cause tried as by the first method of trying equitable issues. But on motion of defendant, certain issues were submitted to a jury. The first jury disagreed and were discharged. The second jury returned a verdict as follows:

1. Q. Did the plaintiffs ever lease the premises in the petition described from George Wilde for mining purposes; if so, at what time?

A. Yea, in the year 1853.

2. Q. Was such lease to plaintiffs from George Wilde in force when defendants commenced work on said premises ?

A. We, the jury, say no.

3. Q. Did the defendants lease from George Wilde the mineral lands described in the plaintiff's petition ? If yea, when ?

A. Yes, in the year 1863.

4. Q. At the time of the lease to the defendants, had they notice that the plaintiffs claimed the right to the possession of the land described in the petition for mining purposes ?

A. No.

5. Q. Who was entitled to the possession of the land described in the petition, for mining purposes, at the time of the commencement of this action ?

A. The defendants.

A motion was made to set aside the verdict of the jury, which motion was sustained, and a decree rendered for the plaintiffs, as prayed for in petition, and the defendants appeal.

*H. T. McNulty* for the appellants.

*Bissell & Shiras* for the appellees.

COLE, J.—The finding of the jury has, in such cases as this, properly triable by the first method for the trial of equitable issues, no binding legal effect upon the determination of the case by the court; but the court may accept or reject the finding and render such judgment as he considers equitable. Revision, § 2999.

The evidence covers four hundred and fifteen pages of manuscript, and has received a careful first and second reading. Without taking the space requisite to a detailed statement of the facts and circumstances proved in the

case, or the process of reasoning, whereby we come to the ultimate conclusion arrived at, we proceed to state two or three of the leading bases whereon that conclusion rests.

It is established beyond dispute that the plaintiffs, at one time, and in 1851 or 1852, obtained a parol license to

1. STATUTE OF LIMITATIONS: parol license: possession.

dig for and remove mineral from the premises in controversy; that they took possession of the premises under the license or contract and continued their prospecting and mining operations thereon and on the lots adjoining, for the purpose of "proving" this, for several years. These facts are testified to by the owner of the fee or license, as well as by other witnesses. This license, or right to mine, although it rested wholly in parol, became a valid and binding contract by virtue of the possession, with the actual consent of the licensor, taken and held under it; and its validity, as well as its manner of proof, is exempted from the application of the statute of frauds, by reason of this fact, as well as the fact that the contract itself is proved by the testimony of the licensor or landlord himself when called as a witness. Revision, §§ 4007, 4010; *Beatty* v. *Gregory*, 17 Iowa, 109.

These plaintiffs, however, ceased to work under their license. The time during which they suspended operations is variously stated from two to five years. The licensor and the plaintiffs, however, agree in their testimony, that at the time work was suspended it was expressly understood and agreed between them that there should be no forfeiture of the license by reason of the failure to work under it; but that the same should continue in force. This agreement was made in consideration of the large expenditure of money by the plaintiffs in "proving" the ground and the very limited amount of mineral secured thereby. But it was also understood and agreed, that if the licensor should at any time after

that, desire the plaintiffs to renew their working under the license, he should give them notice thereof; and then a failure on their part to go to work, should effect a forfeiture of their license. Such notice was given a short time prior to the commencement of this suit, and the plaintiffs complied with the same, by renewing their mining operations on the premises.

The plaintiffs, therefore, have established their right to the premises as against the licensor and every other person, unless it shall be as to those who may have acquired a right or license without notice of the plaintiffs' rights. The defendants claim that they did acquire such right in ignorance of the plaintiffs' claim, and while the plaintiffs were not in such possession of their claim as to afford the defendants even constructive notice.

This is an affirmative defense, and the defendants have the burden of its establishment.

That they had no notice, either actual or constructive, of the plaintiffs' claim, is very satisfactorily established. 2. NEW TRIAL: On the question of their right or license to decree: evidence. mine on the premises in dispute, they have failed in the proof. The defendants themselves testify as to the fact of parol license obtained from the owner and agent, as claimed by them in their defense. And if this was the only testimony this fact might be regarded as established. But they claim to have acquired their license by reason of having first made an arrangement with a previous licensee; and that upon representing to the owner that they had made such an arrangement, he assented thereto and agreed that they should mine on the lot. This previous licensee under whom and whose license they claim, was also called and testified as a witness; and he swears that his and his associates' license was to mine on an east and west crevice from a shaft south of the premises in dispute, but on the same lot,

and that he and his associates had no right to mine as far north on the lot as the premises or *locus* in controversy. The landlord or person from whom the license is claimed to have been obtained, is also examined as a witness, and he testifies positively that he never did license the defendants to mine on the north part of the lot. He also corroborates the testimony of the licensee under whose license the defendants acquired the leave to enter as claimed by them. In view of all the testimony on this point, it is very safe to conclude that the defendants have not established affirmatively the fact that they had a license to mine on that particular part of lot number thirty-one which constitutes the premises in controversy.

We are not unmindful of the fact that there are more or less contradictions or improbabilities in portions of the testimony of the landlord; but they do not go to impair his credibility to any considerable extent as to the essential fact we are considering, upon which he is entirely consistent. Nor are the discrepancies in his own testimony or the contradictions by other witnesses, other than the defendants themselves, of such a character as to discredit him as a witness, or to justify any serious imputations as to his honesty or truthfulness.

When it is remembered that the premises upon which the defendants have a right to mine are on a part of the same lot as the premises in controversy, and that the shaft, through which they were to and did enter, was situated quite a distance east from the entire lot and on the premises of another person; and that the crevice was supposed to run nearly or quite due east and west, which would take them upon that part of the lot on which they had a right to mine; and also the further fact that the real course of the crevice was north-west and was unknown to any one until the actual survey made only a short time before this controversy arose; and when also the further

fact is remembered that these mining rights are often, if not generally, granted in an indefinite and loose manner, it is not at all difficult to solve the apparent conflicts in the testimony, or to determine where the very right rests consistent with the integrity of the witnesses and the good faith of the parties.

But there is still one other matter of controlling influence in the conclusion adverse to defendants. It is this: 3. STATUTE OF FRAUDS: mining license. The defendants claim under a parol license. This license is denied by the pleadings and by the alleged licensor, when called as a witness in the case. In order to make the parol license valid and exempt it from the operation of the statute of frauds, it is necessary to show a possession taken and held under it, and in this the defendants have failed. The entry through the shaft on the adjoining lot was as consistent with possession of the south half of lot thirty-one as with the part in controversy. In other words the possession acquired by the defendants, of the premises in controversy, was not traceable directly to the parol contract as claimed by them, nor necessarily under it. But, on the contrary, their possession was directly attributable to the unexpected course of the crevice and was in no just sense with the "actual or implied consent of the licensor;" and their right to the possession was denied with promptness as soon as brought to the knowledge of the adverse parties. The rule is well settled that possession, in order to be available under the statute, must be ostensibly and actually taken under and by virtue of the parol contract.

Without pursuing the discussion further than simply to indicate, as we have, some of the leading features determining us to one conclusion, we must order that the judgment of the District Court stand

Affirmed.

DILLON, J., *dissenting.*—Convinced that the finding of the jury is consistent with the weight of reliable evidence, and works the more equitable result, I am constrained most respectfully to dissent from the opinion just read. I do not propose to discuss the testimony in detail. This is not a contest between licensees and the owner of the land, but between two sets of licensees. The plaintiffs seek affirmative relief, and to obtain it must show affirmatively their right to it. They must rely upon the strength of their own, and not upon the weakness of the defendants' right.

Now, the jury found from the evidence that the plaintiffs' lease or license *was not in force* when the defendants commenced to work upon the premises. If this is so, then their bill ought, without further inquiry, to be dismissed.

In reference to a question of this character, viz., whether the evidence did not show an abandonment by the plaintiffs of their right to mine, the finding of the jury, especially a jury of the vicinage familiar with mining usages and customs, ought to be regarded as entitled to peculiar weight. And the finding was, I am satisfied, well warranted by the evidence and circumstances. The plaintiffs' alleged license dated as far back as 1852 or 1853. Defendants did not commence mining until 1863. For quite or near five years prior to this time the plaintiffs had not struck a stroke or expended a dollar in mining upon the land of Wilde. The shafts which they had previously sunk had all been filled up. It is admitted that defendants had no notice of plaintiffs' alleged rights. It was only when the defendants, after great labor and expense, had struck a valuable mineral deposit that the plaintiffs, by the assistance and collusion of Wilde (the licensor, and who was entitled to a *greater rent* under the license to the plaintiffs than under that to the defendants), set on foot and sought to re-animate their defunct and

HARVARD LAW SCHOOL LIBRARY.

long abandoned claim, to reap the fruit of the toil and good fortune of the defendants. To this scheme, Wilde, having a direct pecuniary motive, lends his active assistance. His testimony, upon which the plaintiffs largely rely, and his conduct toward the defendants, impress me most unfavorably. I must be pardoned if I do not feel it safe to follow where he is the guide. The miner by whose toil mineral has been found should not be deprived of it in favor of claimants whose case is so suspicious as that of the plaintiffs. I confess that my sympathies are with the men by whose labor and money the discovery was made. And they are against those who lie in ambush to surprise the toilsome and fortunate discoverer with dormant and concealed claims. I am in favor of sustaining the finding of the jury, because it denied the existence of the stale claim or lease of the plaintiffs, and because it secured to the defendants as against the plaintiffs the fruits of their discovery.

The majority opinion founds an argument against the defendants on the ground that their license from Wilde was within the statute of frauds. This, I think, is wholly immaterial, because, as before observed, the plaintiffs must rely upon their own title and right, and because they cannot set up for Wilde (who is not a party), as against the defendants, the statute of frauds.

I am of opinion that the proper decree would have been and is one dismissing the plaintiffs' petition, but as the majority of the court think otherwise, the decree below must stand

Affirmed.