HARKNESS ET AL V. BURTON ET AL.

1. **Landlord and Tenant**: LICENSE OF MINING LANDS. A parol license of mining lands is valid, and can only be terminated by compensation to the licensee or the notice necessary to terminate a tenancy at will.

2. ——: ——. Such license is good against a subsequent lessee or licensee with notice.

3. **Homestead**: WHEN WIFE NEED NOT JOIN IN LEASE. A license to remove mineral from land occupied as a homestead, when its enjoyment for the uses of a homestead is not thereby impaired, may be given by the husband without the assent of the wife.

4. ——: ——. If her assent were necessary to give validity to a parol license, it would be presumed if she had full knowledge of work done or expenses incurred thereunder, and made no objection.

*Appeal from Dubuque District Court.*

FRIDAY, JUNE 19.

THIS is an action in chancery, brought by plaintiffs to restrain defendants from mining lead ore upon certain lands in Dubuque county. By a cross-bill defendants ask that plaintiffs may be enjoined from mining upon the same premises. The relief prayed for by defendants was by the final decree granted. Plaintiffs appeal. Other facts necessary for the proper understanding of the points ruled are found in the opinion.

*L. H. Cady, Griffith & Knight,* for appellants.

*H. T. McNulty, E. McCeney,* for appellees.

BECK, J.—The abstract of the pleadings and evidence upon which this case is presented to us, is quite considerable in extent, the printed arguments of counsel are exhaustive, able, and by no means brief, altogether presenting a voluminous mass of matter which we have considered with great care, and upon which we have reached a very satisfactory conclusion, as to the merits of the case and the rights of the respective parties. Having, in the great quantity of reading

which the consideration of the case has imposed upon us, discovered the true points at issue, we find no difficulty in reaching conclusions both as to the facts and law of the case. ·

The facts of the case, briefly stated, are these. Plaintiffs had been for more than a year prosecuting explorations for lead ore upon the premises in dispute, under, as they claim, a license or parol lease of the owner, one Rittenhouse, and shortly before the commencement of this suit had struck a " crevice," or natural deposit of the mineral. The defendants were mining at the same time on an adjoining tract of land belonging to another proprietor. After sinking a " shaft " a sufficient distance, they began to " drift" toward the lands upon which plaintiffs were mining, and actually entered them, and then struck the same crevice or deposit of ore, which plaintiffs afterward reached by their excavations. Defendants claim the right to remove the mineral found by both parties under a license, and subsequently a written lease executed by Rittenhouse. Each of the respective parties claim the exclusive right to mine upon the land in question under the owner Rittenhouse.

The sole question presented for our determination is, which possess it. We will not enter into a protracted and unprofitable discussion of the evidence bearing upon the point in issue, but will content ourselves with stating, briefly, the conclusions we reach as to the controlling facts of the case.

1. We find that plaintiffs, in their own right, either as grantees or successors of others, long prior to the date of any license or lease from Rittenhouse to defendants, did obtain an exclusive mining license from him, covering the lands in question. This is indisputably established by direct evidence, and, in fact, is not directly denied by defendants. Some question is made as to the rights of some of the parties as successors of others, but that the plaintiffs had permission to explore and mine upon the land is not to be doubted. It is clearly established, though denied by defendants, that this license was exclusive. There is both direct and circumstantial evidence conclusively establishing this position. ·

2. It is claimed that the right thus acquired by plaintiffs was surrendered and the work abandoned prior to the com-

mencement of defendants' operations. Plaintiffs, it is true, during the summer of 1870, did suspend work upon the land. But it is satisfactorily established by the preponderance of testimony, that this was done by the permission and assent of Rittenhouse, and with the express understanding that their license continued, under which they should renew their explorations in the fall. That such was the fact we have no doubt.

3. We entertain no doubt that defendants had both direct and constructive notice of plaintiffs' exclusive right to mine upon the land. There is positive evidence that they were so advised when they first obtained permission from Rittenhouse to run their "drift" upon his land, or at least they had information of him, from which nothing else could have been rationally inferred. But defendants deny this and contradict the evidence by other proof. However, the fact is sufficiently established by other evidence, or rather notice to them must be inferred from other facts, established by the evidence. When plaintiffs suspended work in the summer, (and during that time defendants claim to have acquired the license from Rittenhouse,) they left tools upon the ground; they had before this sunk a shaft within ten feet of the crevice where the lead was afterward found, which was not two hundred feet from another shaft which at the same time was worked by defendants, who could and did see the operations of plaintiffs all the while they were being prosecuted. This crevice was within the ordinary reach of "drifts" started from "shafts," such as plaintiffs had sunk within ten feet of it. If plaintiffs had a license to sink the shaft in search of mineral, the crevice was within the bounds to which they would have been expecting to explore by drifts. That they were at work in this shaft when defendants were at work in another, within two hundred feet, is well established, and it is also proved that these shafts were in plain view of each other. Defendants had notice of the work, and they will be charged by the law with notice of all rights which plaintiffs held in its prosecution, or as resulting therefrom. Considering the direct evidence, with the foregoing, and other facts, we are well satisfied that defendants had notice of plaintiffs' exclusive right to mine in the locality

where the mineral was found. After plaintiffs resumed work in the fall they sunk another shaft near the one just spoken of, in which they found the ore. Defendants, having notice of plaintiffs' rights, will continue to be charged with notice thereof until they are abandoned or terminated, or until some act of plaintiffs is done, which will estop them to deny the abandonment of their rights. But no termination, abandonment, or estoppel is shown.

There is no proof that Rittenhouse has at any time taken steps to terminate plaintiffs' license. Under the well settled 1. LANDLORD doctrines of this court, a parol license of mining AND TEN-ANT: license lands is valid and can only be terminated by com-of mining lands. pensation to the licensee or the notice necessary to terminate a tenancy at will. *Bush v. Sullivan*, 3 G. Greene, 344; *Beatty v. Gregory*, 17 Iowa, 109; *Anderson et al. v. Simpson et al.*, 21 Iowa, 399.

Such license is good against a subsequent lessee or licensee 2 ——:——. with notice. See *Beatty v. Gregory*, and *Anderson v. Simpson*, *supra*.

II. It is argued by defendants' counsel that, as it is shown the lands upon which the mining was performed by plain-3. HOMESTEAD: tiffs and covered by the license, are a part of the when wife need not join homestead of Rittenhouse, and as the wife did not in lease. join in the license, it is void. This position is untenable. We have never heard that a lease of lands not interfering with the possession thereof for the uses of a homestead, and licenses to cut timber, quarry stone or remove mineral and the like, may not be given by the husband without the assent of the wife. This certainly is so when the license in no way interferes with the homestead. Besides, if her assent be necessary to give validity to a parol license, it will be presumed, if she have full knowledge of work done or expenses incurred thereunder, and makes no objection, that she assented 4. ——: ——. thereto. She could not stand by and see money and labor expended and afterwards, by proclaiming that she did not assent, rob the party incurring the expense of the fruit of his toil and outlays. In this case it is shown that plaintiffs expended, before they discovered mineral, $2,000, and that the

wife of Rittenhouse had full knowledge of the work as it progressed and had personal knowledge of the license granted by her husband to plaintiffs.

The foregoing views dispose of the case. We do not find it necessary to follow the learned and diligent counsel through the course of their arguments. In our opinion the case stands upon the simple facts and plain principles of the law above stated. Our minds firmly and satisfactorily rest upon them.

The judgment of the District Court is reversed and a decree will be entered in this Court enjoining the defendants from removing the lead ore from the premises in question and granting such other relief as the nature of the case requires.

REVERSED.

COLE, J., *non-concurring.*

### ON REHEARING.

PER CURIAM.—This cause was again submitted to the consideration of the court upon a petition for rehearing. We have given the case another careful examination, and have thoroughly considered the evidence again. While one member of the court, COLE, J., is unable to concur in the conclusions reached in the opinion heretofore filed, the others are content to abide by them, and adhere to the judgment rendered thereon. We find it unnecessary to add anything to what we have heretofore said in this case. Our former opinion is re-filed and adhered to.