JOHN A. PERRINE, *et al.*, v. A. J. MAYBERRY.

EQUITY; *Specific Performance Enforced.* P. and wife were the equitable owners of one hundred and sixty acres of land, occupied by them as a homestead; they jointly contracted with M. to sell and convey to him eighty acres thereof, and to give a deed therefor, when they had obtained the legal title. Six hundred and eighty-four dollars and eighty cents were paid as purchase-money therefor, by M. to P., and P. and wife put M. into complete possession of the land, and permitted him to make valuable and lasting improvements thereon, of the value of fourteen hundred dollars. Both P. and wife voluntarily consented to a sale of the land to M., and after M. had taken possession, stood by and saw him perform his labor and expend his money thereon. After all this was done, and P. had obtained the legal title, the wife refused to join her husband in conveying the eighty acres to M. *Held*, That a court of equity has the power to, and will enforce, a completion of the alienation, and enforce a specific performance of the contract by P. and wife.

*Error from Harvey District Court.*

ACTION for a specific performance of a contract for the sale of a certain tract of land. Judgment for the plaintiff, *Mayberry*, at the September Term, 1884. The defendants bring the case here. The material facts are stated in the opinion.

*Bowman & Bucher*, for plaintiffs in error.

*Ady & Henry*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Andrew J. Mayberry brought this action against John A. Perrine, and Emeline, his wife, to compel them to specifically perform an alleged contract for the sale of a tract of land. The petition recites, among other things:

"That heretofore, to wit, on or about the 14th day of September, 1871, said defendant John A. Perrine, then being married to the defendant Emeline Perrine, entered into a written contract with the Atchison, Topeka & Santa Fé Railroad Company, a corporation duly organized under the laws of the state of Kansas, by the terms of which contract said John A. Perrine agreed to purchase of said railroad company a certain piece and parcel of land lying and being in the county of Harvey and state of Kansas, and described as follows, to wit: The southeast quarter of section number one, in township number twenty-four south, of range number one, east of the sixth principal meridian, containing one hundred and sixty acres, more or less, according to the United States surveys; that said written contract is not in the possession or within the control or reach of this plaintiff, and it is impossible for him to procure the same or a copy thereof; that by the terms and conditions of said contract the said John A. Perrine was to pay for said land the sum of $—— in annual installments, the last payment to be made upon the 14th day of September, 1882; and that upon the full payment of said sum and amount of money, with the interest and charges thereon, said railroad company agreed to execute and deliver to said John A. Perrine a deed of general warranty, with the usual covenants therein for said land.; that on or about the 28th day of January, 1874, the said John A. Perrine and Emeline Perrine, having ascertained that they would not be able to meet the payments as they would become due by virtue of said contract, proposed to this plaintiff that if he would pay the said John A. Perrine the sum of one hundred and seventy-five dollars, and afterward pay one-half of all subsequent payments falling due to said railroad company for the purchase-money of said premises, that the said plaintiff should be considered and held to be the owner of the west one-half of said quarter-section of land, and

that when such payments were all made, and said railroad company should, in pursuance of its contract with said John A. Perrine, execute to him a deed conveying to him the legal title to said premises, the said defendants should immediately convey to this plaintiff, by a deed of general warranty with the usual covenants, the said west one-half of said premises; that this plaintiff accepted said proposition, and thereupon paid to said John A. Perrine the sum of one hundred and seventy-five dollars; . . . that in pursuance of said contract, the plaintiff, in the month of September, in the years 1874, 1875, and 1876, duly paid to said defendant John A. Perrine one-half of all the money falling due to said railroad company under said Perrine's contract of purchase from said company; that on or about the —— day of September, 1877, at the instance and request of the said defendants, this plaintiff made a full settlement for the west one-half of said quarter-section of land by then paying to said Perrine the sum of three hundred and twenty-five dollars, or thereabouts, as nearly as plaintiff can recollect, the same so paid being the full amount of one-half of all the payments yet to become due to said railroad company upon said contract of purchase from said railroad company to said Perrine, and that in consideration of said payment so made, and the payments made prior thereto by this plaintiff to said defendant, the defendants then verbally agreed with this plaintiff that they would make punctual payments of all sums yet to fall due to said railroad company at the time the same should become due, and that they would, when said railroad company should deed said land to said John A. Perrine, make to this plaintiff a good and sufficient warranty deed with the usual covenants therein."

At the trial, a jury was impaneled to answer certain questions of fact at issue in the case. Among other things, the jury found specially, that Mayberry entered into an agreement with John A. Perrine, and Emeline, his wife, jointly, by the terms of which the defendants agreed to convey to Mayberry the land in controversy, for the sum of six hundred and eighty-one dollars and eighty-eight cents; that Emeline Perrine made the proposition to Mayberry to sell him this land, at his first visit to Kansas, when at Perrine's house, in January, 1874; that Mayberry, after making such agreement, and in pursuance thereof, went into the immediate, actual, and exclusive posses-

sion of the land, with the knowledge and consent of the defendants; that Mayberry paid the defendants the money required under the agreement, and also performed all of its conditions; that Mayberry has been in the continuous and undisturbed possession and occupation of the land, with the knowledge and consent of the defendants, ever since the making of the agreement; that Mayberry has made valuable and lasting improvements upon the land, consisting of buildings, orchards, trees, hedges, etc., of the value of fourteen hundred dollars, with the knowledge and consent of the defendants; that John A. Perrine, and Emeline, his wife, abandoned the use and occupancy of the land in controversy, after the making of the agreement above stated, and in pursuance thereto; that Mayberry paid the defendants — to be used by them in the purchase of the land from the railroad company — the sum of six hundred and eighty-four dollars and eighty cents.

These findings were approved and adopted by the trial court, and upon the evidence that court also made the following special findings of fact:

"That the defendants jointly consented to the alienation of the premises in question; and jointly put plaintiff into possession thereof; and themselves ceased to occupy the premises as a homestead; and have not so occupied the same, or asserted any right to the possession thereof adverse to the claim and occupancy of plaintiff, since putting him into possession."

From the foregoing findings, and the evidence upon which they are based, it is very clear that there was such a joint consent of husband and wife at the time the contract for the land was made, and during the time that the plaintiff below was holding possession thereof, and making lasting and valuable improvements thereon under his contract, and during the time that he was paying for the same, that the defendants thereby so alienated the land in equity that a court of equity has the power to, and will enforce, a completion of the alienation, by enforcing a specific performance of the contract. (*Edwards v. Fry*, 9 Kas. 417.) It is claimed, however, that the verbal agreements entered into between Mayberry and the Perrines were all merged into a

*Equity; specific performance, enforced.*

written contract, executed January 8, 1884, and signed by Andrew J. Mayberry and John A. Perrine; and that as Emeline, the wife of John A. Perrine, never signed the written contract, the contract was, and is, absolutely void, as the same concerns the homestead of the Perrines.

The defense was, that Andrew J. Mayberry and John A. Perrine were the sole parties to the contract about the land. The writing of January 8, 1884, was attached to one of the answers, and was before the trial court, as evidence that Emeline Perrine was not a contracting party. On the other hand, the evidence of Mayberry was to the effect that Emeline Perrine joined with her husband in selling the land; that she did not sign the written agreement of January 8, 1884, because of advice given at the office of the scrivener that it was not necessary for her to do so. In substance, the evidence of Mayberry established that the writing of January 8, 1884, did not embrace the contract between himself and the Perrines. The jury adopted the evidence of Mayberry, and the trial court found the issue upon this point against the Perrines.

Again, neither the statutes nor the constitution requires that the alienation of a homestead with the joint consent of the husband and wife must be in writing. Of course, the joint consent must exist before any voluntary alienation of the homestead. In this case, there was the express joint consent of the husband and wife. (Const., art. 15, §9; Comp. Laws of 1879, ch. 38, §1.) Upon that joint consent, the purchase-money was paid, possession was taken, lasting and valuable improvements were made. Mayberry cannot now be robbed of the fruit of his toil and outlays by the refusal of Mrs. Perrine to sign the deed. (See *Overman v. Hathaway*, 29 Kas. 434; *Newkirk v. Marshall*, 35 id. 77; *Harkness v. Burton*, 39 Iowa, 101.)

We have examined the other questions presented, but the allegations of error stated are not sufficient to reverse or modify the judgment. Therefore the judgment of the district court will be affirmed.

All the Justices concurring.