## GEORGIA P. WALLACE v. THE TRAVELERS' INSURANCE COMPANY *et al.*

POWER OF ATTORNEY *by Wife to Husband — Mortgage on Homestead.* While W. and wife owned and occuped a homestead, she duly executed and acknowledged a power of attorney appointing and authorizing him, as her lawful attorney, "to sign deeds and mortgages, notes, checks, releases, etc., to loan moneys, to sue and be sued, to collect rents, make contracts, giving and granting unto my said attorney full power and authority to do and perform all and any acts and things whatsoever requisite and necessary to be done in and about the premises, as fully and to all intents and purposes as I might or could do if present, with full power of substitution and ratification, hereby ratifying and confirming all that my said attorney or his substitutes shall lawfully do or cause to be done by virtue hereof." This power of attorney was duly recorded in the county where the homestead was situate. More than 2½ years afterward, the power being still unrevoked, the husband obtained a loan and executed a mortgage to secure the payment of the same, which he signed for himself, and also signed as attorney in fact for his wife. In an action to foreclose the mortgage, it was contended by the wife that a conveyance of a homestead by virtue of a power of attorney is unauthorized, and, further, that the authority conferred by the power of attorney in this instance was too general and indefinite to authorize the execution of a mortgage upon the homestead. *Held,* That the power of attorney executed by the wife was insufficient to express that joint consent which the constitution and statutes of this state require in the alienation or incumbrance of a homestead.*

* NOTE.— As to the requisitos of a conveyance of a homestead in general, see *Burkett v. Burkett,* 8 L. R. A. (Cal.) 781; *Law v. Butler,* 9 id. (Minn.) 856; *Kitterlin v. Insurance Co.,* 10 id. (Ill.) 220, and note.

*Error from Crawford District Court.*

ACTION by *The Travelers' Insurance Company* and others against *Georgia P. Wallace,* on promissory notes and to foreclose mortgages. Judgment for plaintiffs, and defendant brings error. The facts sufficiently appear in the opinion herein, filed December 8, 1894.

*Wells & Wells,* for plaintiff in error:

The mortgage, executed in the manner and form as it is set out in the petition, is not sufficient to evidence the joint consent of husband and wife to the alienation of the homestead, as required by § 9, article 15, of the constitution of the state.

The alienation of such homestead after it has once been established is such a personal privilege as cannot be delegated by either the husband or the wife to each other, nor to a third person to be performed for them. 1 Story, Ag., § 12, p. 484; *Poole v. Gerrard,* 65 Am. Dec. (Cal.) 484, note.

Powers of attorney are subject to a strict construction, and where authority is given to perform specific acts and general terms are also employed, the latter are limited to the particular acts authorized. 1 Devlin, Deeds, §§ 358–361; *Rossiter v. Rossiter,* 8 Wend. 494, 24 Am. Dec. 62; *Ashley v. Bird,* 1 Mo. 640, 14 Am. Dec. 313; *Upton v. Suffolk County Mills,* 11 Cush. 586, 59 Am. Dec. 163.

As to the homestead, the wife's disabilities have not been removed, and there has been a guard thrown, not only around her, but also around her husband, and the doctrine of unity between husband and wife has been solemnly declared in the constitution, and that the homestead cannot be alienated without their joint consent.

The constitution must be strictly followed. See *Jenkins v. Simmons,* 37 Kas. 496.

The wife cannot, even after the execution of a mortgage of the homestead by the husband, ratify said mortgage so as to breathe life into its existence. Such mortgage will be void. *Howell v. McCrie,* 36 Kas. 636, 59 Am. Rep. 584.

Two separate and independent conveyances by the husband and wife would not be sufficient to create a lien on the homestead. *Ott v. Sprague,* 27 Kas. 620.

The prohibition against separate alienation is absolute when the relation of husband and wife exists. *Chambers v. Cox,* 23 Kas. 395; 1 Story, Ag., § 12.

Husband and wife cannot by mutual consent confer, by power of attorney to each other, the power to convey or alienate the homestead. *Spoon v. Van Fossen,* 53 Iowa, 494; *Poole v. Gerrard,* 65 Am. Dec. (Cal.) 484, note.

Consent must not be brought about by any fraud, deception or misstatement of material facts by the other party to the alienation, but must be the voluntary and intelligent consent of both husband and wife. *Bird v. Logan,* 35 Kas. 228; *Warden v. Reser,* 38 id. 96.

The homestead law is a part and parcel of the public policy of the state of Kansas, and its provisions in cases of this character cannot be waived or avoided except by an exact and literal compliance with the mode and manner it has prescribed. *Pilcher v. A. T. & S. F. Rld. Co.,* 38 Kas. 524.

*Webb & Caldwell,* for defendants in error:

A wife may appoint her husband her attorney in fact to act for her and in her name. It is settled she may act by attorney. *Munger v. Baldridge,* 41 Kas. 236.

By the terms of the power of attorney, Wallace is, in the name of and for Georgia P. Wallace, empowered to sign deeds, mortgages, and notes.

When one may execute a deed, he may execute an instrument transferring a land title. *Farnham v. Thompson,* 34 Minn. 330.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to recover upon promissory notes, and to foreclose two mortgages executed by James D. Wallace, and Georgia P. Wallace, by her attorney in fact, James D. Wallace, one of which mortgages was owned

by the Travelers' Insurance Company, and the other by Angell Matthewson & Co. The insurance company recovered a judgment against the Wallaces for $1,852, and Angell Matthewson & Co. recovered a judgment for $170. The mortgages were foreclosed, and it was decreed that the property should be sold, and the proceeds applied, first, to the payment of the costs and to the taxes due against the property; second, to the payment of the judgment of the insurance company; and, third, to the payment of the judgment of Angell Matthewson & Co. A review of the rulings made upon the trial is asked, and the principal question is as to the validity of the mortgages that were foreclosed. They were executed in February, 1887, and were signed by James D. Wallace, and by him as attorney in fact for his wife. The power of attorney under which Wallace signed the name of his wife was executed on July 18, 1884, at Bushnell, Ill., in which Georgia P. Wallace appointed her husband as her lawful attorney

"to sign deeds and mortgages, notes, checks, releases, etc., to loan moneys, to sue and be sued, to collect rents, make contracts, giving and granting unto my said attorney full power and authority to do and perform all and any acts and things whatsoever requisite and necessary to be done in and about the premises, as fully and to all intents and purposes as I might or could do if present, with full power of substitution and ratification, hereby ratifying and confirming all that my said attorney or his substitutes shall lawfully do or cause to be done by virtue hereof."

The power of attorney was duly acknowledged, and, having been transmitted to Kansas, was duly recorded in Crawford county on the 9th day of August, 1884. The testimony tends to show that the Wallaces owned the property in dispute, and had occupied it as a homestead for several months before the power of attorney was executed and recorded; and it is further shown, that Mrs. Wallace and her child continued to live there until after this action was begun. The contention now is, that a conveyance of a homestead by virtue of a power of attorney is a nullity, and, further, that if the homestead may be alienated under a power of attorney, the

authority conferred in this instance is too general and indefinite to authorize the execution of a mortgage upon real estate.

If a mortgage upon a homestead may be executed by either husband or wife through a power of attorney from the other, and if the power given by the wife to the husband in this case is sufficient in form and substance, the mortgages in question must be held to be good. It is conceded that the wife executed the power of attorney, and it is not questioned that it remained unrevoked and in full force when the mortgages were executed. It is strongly urged, however, that the preservation of the homestead rights requires that there shall be the concurrent personal consent of each spouse when the conveyance or mortgage is executed. Under our constitution joint consent is indispensable, and it is said that, as it is the policy of the law to preserve to every family a homestead, the restrictions which have been made upon the alienation of the same should be strictly complied with. It is therefore said that good policy requires that, before the title of the homestead shall be divested, or any interest transferred or affected, there shall be consultation between husband and wife, and the personal consent of each obtained at the time the transfer or contract is made. The claim is that neither can act by proxy, and that, when a power of attorney is executed by one, only the consent of such a one is then expressed, and that when the conveyance is subsequently made by the other spouse, he or she only consents, and therefore there is a lack of that contemporaneous joint consent which the constitution requires. (*Gagliardo v. Dumont,* 54 Cal. 496.) Then, again, it is urged that the power of attorney in this instance fails to describe any real estate, or to show that the homestead was within the contemplation of the wife when the power of attorney was executed. It is said that, while she gave her husband authority to sign mortgages, it does not appear that she intended to incumber her own property, or to do more than authorize the sale or mortgage of the property the title of which was in her husband. The majority of the court, therefore, hold that the power of attorney in the present case is in-

sufficient to express that joint consent which the constitution and statutes of this state require in the alienation or incumbrance of a homestead.

The writer is unable to agree with this conclusion. Neither the husband nor the wife, acting alone, can execute a conveyance or mortgage of the homestead which is of any validity, and no construction should be placed upon the constitutional ·restraints on alienation which will to any extent dwarf the homestead rights. It is clear that to incumber the homestead there must be a joint consent of both when the incumbrance is executed. How must that consent be given? Can the wife authorize another to express her consent, and, if so, may she confer that authority upon her husband? In some states not only is consent required, but it is necessary that both, acting contemporaneously, shall sign the same joint instrument. In others, in addition to her signature, she must, in a private examination, express to an officer taking the acknowledgment that she knowingly and voluntarily signs the instrument. In still others, in order to convey or incumber the homestead, there must be in the instrument itself a renunciation of the homestead right, or an express stipulation that the homestead is intended to be conveyed or affected by the instrument. The constitution of our state does not expressly provide how the consent shall be given, nor have we any statutory provision which requires that the husband and wife shall contemporaneously sign the same joint instrument. In *Ott v. Sprague*, 27 Kas. 624, it was recognized that a husband and wife might alienate the homestead by two separate instruments, when it was intended by both that such instruments should operate together as a single instrument; and, being so connected, they might together be considered as the joint consent of both.

It has been decided that "neither the statutes nor the constitution requires that the alienation of a homestead with the joint consent of the husband and wife must be in writing." (*Perrine v. Mayberry*, 37 Kas. 262.) In *Pilcher v. A. T. & S. F. Rld. Co.*, 38 Kas. 516, it was held that it was not es-

sential that the joint consent should be expressed in writing, and it was said that "consent is best evidenced by a writing to that effect; but the constitution does not in express terms require that it shall be so done, and hence it can be established by such facts and circumstances as the necessity of particular cases requires." (See, also, *Dudley v. Shaw*, 44 Kas. 683.) Of course, real property must be conveyed in the manner prescribed by statute, and in respect to conveying real property or any interest which she may have therein, the wife stands upon an equal footing with the husband, and is governed by the same rule. The statute provides how the consent of parties may be expressed in order to make an effective conveyance of real estate, and there is an express provision that any person having an interest may do so by an attorney in fact. (Gen. Stat. of 1889, ¶ 1112.) In *Munger v. Baldridge*, 41 Kas. 236, it was held that a married woman might not only convey her inchoate interest in her husband's real estate through a power of attorney, but that she was free to select whomsoever she pleased as her agent or attorney for that purpose, and that no reason existed why her husband might not act in that capacity. In that case the statutory relations between husband and wife were considered, and it was held that nothing in the law or its policy forbids that the husband should act as the agent or attorney of the wife in conveying real estate. It was said:

"The statutes of Kansas recognize no conflict of interest between them, nor any necessity to protect the wife against the act of the husband. They do not contemplate that she may be led to convey her interest through fear, compulsion, or the undue influence of her husband; and hence we have no enactment, as some states do, that in making a conveyance she must undergo a private examination by an officer to learn whether she is intimidated by her husband or is executing the conveyance against her will. On the contrary, the law proceeds upon the theory of confidence, good faith and honest dealing between husband and wife; and while there may be cases where the husband may take advantage of this confidence, yet it is almost as liable to occur through his obtaining

her signature to the deed of conveyance as it would be in procuring from her a power of attorney authorizing him to convey the same property. We conclude that the wife can appoint her husband as her agent and attorney in fact to convey the inchoate interest which she holds in his real estate, and that an instrument duly executed by himself and by him for her, under such authority, is effectual to transfer such interest."

As our law authorizes the husband to act for the wife in the conveyance of real estate, and no exception is made with reference to the conveyance of the homestead, no reason is seen why he may not consent for her, and sign her name to a mortgage or conveyance of the homestead. The authorities generally are to the effect that, where the constitution fails to provide the method of giving consent, compliance with the general provisions of the legislature as to the means of conveying real estate is sufficient. The power of attorney, when properly executed and acknowledged, is a continuing consent which remains in the attorney until the power is withdrawn or revoked. In signing the instrument, the husband acted for himself, and also, under the authority conferred, acted for his wife. At the time the conveyance was executed she was present in him, consenting to the conveyance, and as he signed the instrument at the same time, it would appear that there was that joint consent which the constitution requires.

It is said that considerable time elapsed from the execution of the power of attorney before the mortgage was made, but it was duly acknowledged and recorded, and standing on the public record as it did, the wife cannot shut her eyes to its existence, and the public had a right to rely on its validity. (*Patton v. King*, 26 Tex. 685; *Warren v. Jones*, 69 id. 462; *Jones v. Robbins*, 74 id. 615.)

In regard to the last objection it may be said, that while the power conferred is general, it cannot be held invalid. The power granted is to sign any deeds, mortgages and releases which she might or could do if present, and to that end the husband was given full power and authority to do any

and all acts and things whatsoever necessary to accomplish that purpose. This power of attorney was recorded in the office of the register of deeds of the county in which the lands mortgaged were situate, and, within the rule of *Munger v. Baldridge*, supra, is sufficient authority for the conveyance or incumbrance of any land within that county. It is therefore the opinion of the writer that the judgment of the district court was right. But, as a majority of the court hold the power of attorney to be invalid for the purposes intended, there must be a reversal of the judgment of the district court, and a new trial of the cause.

HORTON, C. J.: The testimony in this case, and that offered upon the trial by the defendant below, which was rejected, emphasizes the gross injustice of holding that the power of attorney executed by the wife, and preserved in the record before us, is sufficient to express the joint consent of husband and wife which the constitution and the statutes of the state require in the alienation or incumbrance of a homestead occupied as a residence by the family.

In 1884, the father of Mrs. Georgia P. Wallace, the wife of James D. Wallace, gave and transferred to her the real estate described in the mortgages. Soon after, Mrs. Wallace, with her minor child and husband, occupied the property as her actual residence, and has ever since continued to occupy the same. During the latter part of the year 1884, she made a visit to the state of Illinois. While she was there visiting, and before her return, her husband, J. D. Wallace, wrote her several letters, in which he informed her, among other family matters, that he had bought some town lots out at a little town called Caldwell, in this state, and desired to sell them; that he could not sell them unless he had authority from her so to do, or her signature to a deed therefor; that he did not know what person he would be able to make a sale of them to, and could not safely have deeds of conveyance executed. He sent her the power of attorney in the record, without her signature, and assured her that he did not want to interfere with any of

her property or money whatever, and stated that he did not intend to in any manner alienate her homestead. Mrs. Wallace signed and acknowledged the power of attorney on the 18th of July, 1884, and returned it to her husband. He placed it on record in Crawford county, in this state, where the land is situated, on August 9, 1884. On the 3d of February, 1887 — three years afterward — her husband, without the knowledge or consent of his wife, made an application to the Travelers' Insurance Company, through its agents, Angell Mathewson & Co., for a loan on the homestead in the sum of $1,350, at a time when it was actually occupied by the family. The application was granted, and the mortgages executed by James D. Wallace in person, and also by him for his wife, as her attorney in fact. Wallace then deserted his wife, and has not lived with her since, and she does not know of his whereabouts. The mortgages described the property as "the homestead of the grantors."

The power of attorney, executed by the wife to the husband, does not describe any real estate, nor refer in any way to the homestead of the family. This court has decided that two separate and independent conveyances by the husband and wife would not be sufficient to alienate the homestead. (*Ott v. Sprague*, 27 Kas. 620.) This court has also said: "The wife cannot, even after the execution of a mortgage of the homestead by the husband, ratify the mortgage of the homestead by the husband so as to breathe life into its existence. Such a mortgage will be void." It must be conceded that, if the husband had incumbered the homestead under the power of attorney by a deed from his wife alone, the mortgage would be void. Not so, if the real estate was not actually occupied by the family as a residence. The alienation or incumbrance of a homestead must be with the "joint consent of husband and wife"; therefore, the conveyance or alienation of a homestead must be the consenting acts of the husband and wife. If the wife may delegate to her husband the power to act for her in the conveyance or alienation of the homestead, the power of attorney must expressly

or by necessary implication confer the power to consent with him, or to act with his consent, in such conveyance or alienation.

The cases of *Munger v. Baldridge*, 41 Kas. 236, and *Wilkinson v. Elliott*, 43 id. 590, are not decisive of this case, upon the facts disclosed. In the Munger case, there was no transfer or conveyance of any homestead. The power of attorney in that case was definite in giving power to transfer the wife's interest in any lands and tenements the title to which was in the husband, and in which Mrs. Munger had any interest as his wife. In the Wilkinson case, the deed did not convey a homestead, because the general finding of the trial court was interpreted by this court as meaning that the homestead had been voluntarily abandoned. Under all the circumstances, I do not think that the power of attorney executed by the wife alone, in and of itself, was sufficient to give authority to the husband, or anyone else, to convey the homestead of the family.

ALLEN, J.: The constitutional provision requiring the joint consent of husband and wife to any alienation of the homestead must be given effect in accordance with its letter and spirit. The legislature could not, under the guise of a mere regulation of the mode in which that consent might be expressed, do away with the substance of the requirement. Joint consent clearly implies the concurrent action and mental accord of husband and wife. The provision was not incorporated in the fundamental law for the benefit of either husband or wife alone, or both of them together, but for the children as well — for the whole family as a social unit. The vast importance of preserving to each family a dwelling place to which every member might look for shelter, secured against improvident alienation and incumbrance, was recognized by the framers of the constitution. Nothing tends more surely to preserve social order, to encourage virtue, industry, and independence, than a home owned by the occupants.

In order to sustain the judgment in this case, it must be

held, in effect, that the wife may transfer to her husband the power to assent for her, as well as himself, to the alienation of the homestead, to determine all questions as to time, terms and purpose of the sale, and to make this assent without the benefit of consultation with her. The facts that the power of attorney was executed, that it was subject to revocation at any time, and that it remained in full force without any attempt at revocation up to the date of the mortgage, may seem to some minds to present a logical chain carrying the action of the wife when executing the power of attorney on through a period of years, and finally giving it effect through the action of her husband as an assent to the incumbrance. Yet it is clear in this case that the wife had no knowledge of the proposed mortgage, and never, in fact, gave to it any intelligent assent. The assent required by the constitution is not a blind action, performed without knowledge or a fair opportunity to know the consequences, but must be an intelligent concurrence on the part of the wife in the conveyance. That a homestead cannot be conveyed or incumbered by the husband and wife acting separately, at different times and places, through separate instruments, has been settled by this court. (*Ott v. Sprague,* 27 Kas. 620; *Howell v. McCrie,* 36 id. 636.) The power of attorney executed by the wife in this case is just as separate and distinct from the mortgage afterward executed by her husband as were the separate instruments executed by husband and wife in the cases above cited. The only way that joint or concurrent action can be deduced from them is by making the wife constructively present at the execution of the mortgage, and constructively concurring and assenting to that which she doubtless would have refused to assent to had she known of the purposes of her husband in executing it. The power of attorney contains no reference whatever to the homestead. It is as general as such an instrument could be made. We are not required, in this case, to go to the length of holding that the joint consent of husband and wife must always of necessity be expressed at the same time and place, and through the same

instrument. As was said by Mr. Justice VALENTINE in the opinion in *Ott v. Sprague,* supra :

"It might be that a husband and wife, by two separate instruments, could alienate the homestead, when it was intended by both that such instruments should operate together as a single instrument; for in such a case it might, perhaps, be said that the separate consent of each had such a connection with each other that they might together be considered as the joint consent of both."

It is not necessary, either, that we should decide in this case that the husband could not be authorized by the wife in any manner to attach her signature to a deed. But it is necessary in all cases that the husband and wife assent jointly; that both shall know of the proposed alienation; that both shall assent to it; that each shall assent with the knowledge and concurrence of the other. The minds of husband and wife must meet and concur in the alienation, or incumbrance, just as minds of contracting parties must meet and concur in entering into any valid contract, and one mind cannot be made through agency, or by any legal abdication of its rights, to vest in the other the power to act singly in fact with the the same effect as the concurrent action of both. One mind clearly cannot act in a dual capacity. The very purpose of the constitutional provision is to require that the proposed alienation shall be made known to the wife as well as to the husband; that it shall be considered from her standpoint; that her views, feelings and wishes shall be brought to bear on the case; and that, unless she yields her assent, no alienation shall take place.