A. W. HOSFORD et al., Appellants, v. MATTHEW METCALF et al.

Mining Privilege: CONSTRUCTION. Where the owner of land orally granted mine privileges therein to defendants at a time when mining operations in the locality were being conducted for lead only, not for zinc, and defendants discovered zinc, which they did not mine for several years, because there was no market, such facts do not show that the license was contemplated by the parties, as restricted to the mining of lead only, but the privilege extended to zinc.

GRANT AND LICENSE: Revocation and transfer. A parol grant of mining privileges in land, on the strength of which grantees expended much money and labor in work on the premises gave grantees an interest in the land, entitling them to continue, and which was transferable, and was not merely a personal license and revocable.

Death of grantor. An oral grant of mining privileges, on the strength of which the grantees expended much money and labor on the premises gave them an interest in the land and was not a revocable license, which was revoked by the grantor's death.

TERMINATION: Where defendants, on the strength of an oral grant of mining privileges, expended money and labor on the premises, they acquired an existing exclusive privilege; and plaintiffs' who claimed under a grant from the heirs of the owner, were not entitled to terminate the privilege by paying defendants for their outlay.

ABANDONMENT. Where defendant secured mining privileges in land at a time when zinc mining was not profitable, and, discovering only zinc, did not work the mine for several years, but afterwards worked it, from time to time, whenever the market for zinc warranted, there was no abandonment.

WAIVER OF RIGHT TO DISPOSSESS. Where defendant secured mining privileges in land at a time when zinc mining was not profitable, and, discovering only zinc, did not work the mine for several years, but afterwards worked it from time to time whenever the market for zinc warranted, the fact that the owner

might have taken possession on the first failure to work the mine, but did not do so, did not give plaintiffs the right to dispossess defendants under a grant from the owner's heirs.

*Appeal from Dubuque District Court.*—-HON. M. C. MATTHEWS, Judge.

FRIDAY, FEBRUARY 1, 1901.

PLAINTIFFS, A. W. Hosford, John Southwell, E. T. Goldthrope, and Anton Trieb, partners under the firm name Alpine Street Zinc Mining Company, bring this action against Matthew W. Metcalf, J. W. Waters, Frank Coals, Sr., H. L. Lundbeck, John Spensley, David Metcalf, and John Alexander, partners under the firm name Avenue Top Mining Company, to enjoin them from mining upon a tract of land known as the "Dillrance Ground." The plaintiffs claim the exclusive right to mine on said land by virtue of written leases to them from the widow and heirs of J. W. Dillrance, deceased, to whom the same was bequeathed; and the defendants claim right by virtue of a grant in parol by said J. W. Dillrance to their grantors. Decree was rendered dismissing the plaintiffs' petition, and for costs, from which they appeal.—*Affirmed.*

*Crane & Hosford* for appellants.

*McCarthy & Kenline* for appellants.

GIVEN, C. J.—I. A brief statement of facts about which there is no dispute will make plain the points in controversy: Mr. J. W. Dillrance owned about one acre in the belt of mineral lands in and near the city of Dubuque. The minerals found in that locality are lead and zinc, the latter consisting in what is called "Black Jack" and "Dry Bone." These minerals are found in crevices or veins generally running east and west 50 to 200 feet below the surface and from

50 to 300 feet apart. On the land immediately north of the Dillrance tract is a crevice called "Avenue Top Crevice," and on the Dillrance land one called the "Black Crevice." About the year 1875 McNulty, Burt & Co. procured mining privileges on the land north of the Dillrance land, and sunk a shaft to the Avenue Top crevice, from the bottom of which shaft they mined east and west along the crevice to considerable distance. Wishing to prospect the land of Mr. Dillrance, and to mine the same if minerals were found in paying quantities, they secured from Mr. Dillrance verbal permission to do so, on certain conditions as to payment of royalty, etc. Having this permission, they proceeded at large expense, and drove an entry from a point in their mine east of the shaft, south 300 foot, to the Black crevice on the Dillrance land. There is some controversy as to the extent that mining was carried forward on the Dillrance land through this entry. The defendants' claim to have succeeded to the rights of McNulty, Burt & Co. in their mine, and to prospect and mine on the Dillrance land, through a succession of transfers. We will not inquire as to each of these transfers. It is sufficient to say that under them these defendants have whatever rights McNulty, Burt & Co. would have that were transferable.

II. Appellants' first contention is that the right granted to McNulty, Burt & Co. was to mine for lead ore only, not for zinc ores. It appears that at the time the entry was driven south to the Black crevice there was no demand for the zinc ores, and that the mining in that region was then being prosecuted for lead ore only. Appellants insist that for this reason lead ore only was contemplated by the parties. The utility of Black Jack and Dry Bone for the manufacture of zinc was known, but the price did not then warrant mining these ores; but in time the demand increased, the price went up, and zinc ores were mined as long as the price rendered it profitable, and thus it was abandoned and resumed as the market warranted. Only

zinc ores were found in the Black crevice, and, as those ores were not mined therefrom for some years after the crevice was struck, plaintiffs insist that only lead ore was contemplatde. The state of the market explains why mining zinc ores was suspended and resumed from time to time. We are satisfied that both Mr. Dillrance and McNulty, Burt & Co. contemplated the mining of zinc ores, as well as lead, under this permission.

III. Appellants' next contention is that the parol license to McNulty, Burt & Co. was a personal privilege founded in personal trust and confidenc, and therefore not transferable, and that an attempt to transfer the same forfeited the privilege. While this is true as to merely personal privileges, we think, in view of the facts, that this license to prospect and mine became more than a mere personal privilege. In this case the licensees had, under the license, and without the knowledge and consent of the licensor, expended largely labor and money. This being so, the licensor could not revoke the license without refunding the expenditure, and in such case the licensee "would have such an interest in real estate as would entitle him to bring an action in this form [ejectment] to recover it." *Beatty v. Gregory,* 17 Iowa, 109; *Upton v. Brazier,* 17 Iowa, 153; *Bush v. Sullivan,* 3 G. Greene, 344; *Harkness v. Burton,* 39 Iowa, 101. It is a recognized rule that ejectment may be maintained for corporeal, but not for incorporeal, hereditaments. *Beatty v. Gregory, supra.* In that case it is held that, the licensee having expended labor and money under his license, his interest was such an interest in real estate as entitled him to bring ejectment. In *Dark v. Johnston,* 55 Pa. St. 164, cited by appellants, the license was to prospect for and take oil; and the court, holding that this passed no property in the oil until reduced to possession, held that ejectment would not lie. The court said: "There is a manifest difference between the grant of all the coal or ore within a tract of land, or even the grant

of an exclusive right to dig, take, and carry away all the coal in the tract, which we held in *Caldwell v. Fulton,* 31 Pa. St. 475, to be a grant of corporeal interest, and a grant of the waters in or on the tract. The nature of the subject has much to do with the rights that are given over it, and to us it appears that the right to take all the oil that may be found in a tract of land cannot be a corporeal right." It is further said in that case: "It has been held in this state that even a parol license executed may become an easement upon the land, and that, when acts have been done by one party in reliance upon a license granted to another, the latter will be equitably estopped from revoking it to the injury of the former." We need not cite further authorities to show that under the facts McNulty, Burt & Co. became possessed of more than a mere personal privilege. They became possessed of an interest in the real estate; a corporeal heredita- ment; a license of which they could not be deprived without compensation. In *Mendenhall v. Klinck,* 51 N. Y. 246, cited by appellants, a license was given to prospect for oil, with the right to elect to take the land upon certain terms if oil was found thereon. The party never elected to take the land, and the court held that: "Until they should elect, they had no interest in the lands. They had a mere license to go upon the lands, with the right of election. This license extended only to them and their agents. They could not sell or assign it." It appears in that case that the party not only failed to make an election, but failed to prospect the land. Say that this license was to an individual who died while in the exercise of the privilege; would it be claimed that the privilege died with him, that his estate had no interest in it, and that his expenditures were forfeited? Surely not, because by reason of his expenditures the privilege had be- come more than a mere personal privilege. It had become a property interest,—an interest that would pass to his es- tate, or which his creditors might pursue. If the interest of McNulty, Burt & Co. had by reason of the facts become more

than a personal privilege,—had become an interest in property, a corporeal hereditament,—then surely it might be transferred.

IV. Appellants' next contention is that the prosecution of the privilege given to McNulty, Burt & Co. was long since abandoned, and therefore operated to revoke the license. No time being given within which the privilege might be exercised, it would continue for a reasonable time, and what would be a reasonable time must be determined by the circumstances. It is claimed that, because mining in the Black crevice was not prosecuted for several years after that crevice was reached, there was an abandonment of the privilege. We have seen that the reason why mining was not proscuted in that crevice was because there was not sufficient demand for the mineral in that crevice to justify mining it. The evidence shows that this entry to the Black crevice was not abandoned, but at different times was entered, and more or less work done in it, and that mining in that crevice was resumed whenever the demand justified it. Mr. Dillrance seems to have been satisfied with what was being done, as he never treated the privilege as abandoned. Appellees insist that no forfeiture was pleaded, and therefore it cannot be considered; but, as we find that no forfeiture in fact took place, we need not consider this contention.

V. Appellants contend that under the facts this case comes within the principle announced in *Bush v. Sullivan, supra,* and that as McNulty, Burt & Co. failed to find the mineral for which they were searching, namely, lead ore, in the Black crevice, and ceased to work in that crevice, Mr. Dillrance had the right to take possession.

The answer to this contention is that McNulty, Burt & Co. did not abandon the right to mine in that crevice, and Mr. Dillrance did not withdraw the privilege or take possession. The further claim of appellants that the rights granted by Mr. Dillrance were, by operation of law, terminated by

his death in September, 1891, is not well founded; for, as we have seen, the privilege granted had ripened into more than a mere personal privilege. It had become. a property right and could only be terminated on reasonable notice, and upon compensation made.

VI. Appellants insist that, if we find as we have, the judgment below should be modified, an accounting had as to the expenditures of the defendants under this license, and plaintiffs permitted to terminate the license by paying the defendants for their outlay. The defendants, having an existing, exclusive right to mine that land, plaintiffs took nothing by their lease, as against them, and are not entitled to terminate the defendants' privilege by making compensation. What we have said fully disposes of the questions discussed, and leads us to the conclusion that the decree of the district court is correct, and it is therefore AFFIRMED.