**PROCHEMCO, INC., Appellant,**

v.

**CLAJON GAS CO. and West Texas Gas, Inc., Appellees.**

**No. 6606.**

Court of Civil Appeals of Texas, El Paso.

Aug. 10, 1977.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Lucius D. Bunton, Odessa, for appellant.

Bullock, Scott & Neisig, Tom R. Scott, Russell W. Neisig, Midland, for appellees.

## OPINION

OSBORN, Justice.

This is a declaratory judgment and injunction suit filed to determine the validity of an option in a Gas Sales Contract covering irrigated farmland in Pecos County. The case was tried to the Court on an agreed statement of facts, pursuant to Tex. R.Civ.P. 263. The trial Court refused to extend the contract under the terms of the option and entered judgment for Appellees. We reverse and remand the case to the trial Court for entry of a judgment for the Appellant.

On August 17, 1970, Coyanosa Land & Cattle Company, a wholly owned subsidiary of Prochemco, Inc., owned the surface of 1,673 acres of farmland in Pecos County. On that date, Coyanosa entered into a Gas Sales Contract with Clajon Gas Co., under the terms of which Coyanosa agreed for itself, its heirs and assigns:

" * * * to purchase natural gas from Company, for utilization as the total power requirements (particularly, but without limitation, for the operation of internal combustion engines) necessary for the lifting of water for use in the irrigation of the following described land in Pecos County, Texas * * *."

The agreement provides that the terms of the contract are and shall be deemed covenants running with the described land and shall extend to all wells utilized in irrigating said land. Gas was sold at a price of 30¢ per mcf for a term of five years beginning August 1, 1970.

The contract granted to Prochemco, but not to its assigns or successors, the option to extend the contract for an additional five years at a price of 34¢ per mcf with notice of exercise of the option to be given 90 days prior to August 1, 1975. Such notice was given by Prochemco.

In May, 1974, Coyanosa conveyed a 99% interest in the land in question to G. Merwyn Eiland. At the same time, Coyanosa executed a bill of sale to convey all of its interest in any personal property on the land to Eiland. Coyanosa also assigned to Eiland an Operating Agreement and Lease Contract with its tenant, Mike Burkholder. On July 19, 1974, Prochemco quitclaimed to Eiland all of its right, title and interest in the Pecos County land. Coyanosa Land & Cattle Company was voluntarily dissolved on July 2, 1975, having made no further transfers of any interest in the land in question.

In reply to the letter exercising the option, Clajon replied that since Prochemco's subsidiary had conveyed a 99% interest in the land, the option could not be exercised by Prochemco. This suit resulted.

The Appellant presents a single point of error complaining of the trial Court's failure to recognize the option and extend the contract for an additional five years. Appellant urges that since the option, which was not assignable, was personal to Prochemco, it could exercise the option even though its subsidiary had sold a 99% inter-

est in the land covered by the gas contract. Appellees contend that the rights of Prochemco were assigned with the land and that there could be no strict compliance with the terms of the option by one not owning an interest in the land.

■ There is no contention by either party that the contract is ambiguous. The general rule of contracts is that where the contract is unambiguous, the Courts will give effect to the intention of the parties as expressed in the writing. *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515 (Tex.1968).

■ "The chief consideration in deciding whether a covenant runs with the land is whether it is so related to the land as to enhance its value and confer a benefit upon it * * *." 20 Am.Jur.2d Covenants, Conditions, etc. Sec. 37, p. 607 (1965). One of the types of contracts that may run with the land is one to furnish gas. 20 Am. Jur.2d Covenants, Conditions, etc., Sec. 38, p. 608 (1965); *Slife v. Kundtz Properties, Inc.,* 40 Ohio App.2d 179, 318 N.E.2d 557 (1974); *Alderson v. Empire Natural Gas Co.,* 116 Kan. 501, 227 P. 347 (1924); *Harbert v. Hope Natural Gas Co.,* 76 W.Va. 207, 84 S.E. 770 (1915). It is obvious that it was the intention of the parties to this Gas Sales Contract that the covenant to buy and sell natural gas for irrigation purposes be one running with the land, and they expressly so stated in the gas contract. We hold that the contract did, as the parties intended, create a covenant running with the land and when Eiland purchased all but one percent of the land, the contract right (to purchase gas for utilization as the total power requirements for the lifting of water for use in the irrigation of the land), which was assignable, passed with the land.

■ But as to the option, it must be remembered that it was not assignable. At the time the option was given, Prochemco had no title to the land, record title being in Coyanosa. Thus, the option was personal to one who was not even a party to the contract and had no record title to the land. It is recognized that "by the express terms of the option the right may be made personal to one to whom it is given." Williston on Contracts, Sec. 415, p. 73 (3rd ed. 1960). Williston on Sales, Vol. 1, Sec. 10–7, p. 431 (4th ed. 1973), notes that "the parties to an irrevocable option may specifically provide that the right to exercise that option is a personal one and nonassignable." In *Fulton v. Messenger,* 61 W.Va. 477, 56 S.E. 830 (1907), the Court said:

" * * * An optional contract, giving the right to purchase property within a certain time, and upon certain conditions, is often a valuable right; but, under the authorities cited, it is a personal privilege, limited to the optionee, where there is no provision for its assignment. * * *"

Following a Texas Supreme Court decision, the Supreme Court of Iowa in *Myers v. J. J. Stone & Son,* 128 Iowa 10, 102 N.W. 507 (1905), recognized the right of parties to a contract to determine the personal nature of an option in a lease agreement. The Court said:

" * * * In its very nature an option is subject to such limitations as the owner may impose. He may make its exercise dependent upon the performance of conditions precedent contained in the same contract, as of a lease; or, for reasons appearing sufficient to himself, he may restrict the privilege of buying to a single individual. The right to discriminate between purchasers freely is one of the attributes of private ownership of property, and the reasons which lead to it are not the proper subjects of judicial inquiry. They inhere in the right to freedom of contract. * * * But in the instant case the very nature of the option obviated the possibility of its transfer to another. It was granted to the lessee named, but to no other person, and this necessarily excluded all others, and constituted it merely a personal privilege, which was no more assignable than rights arising out of contracts involving relations of personal confidence. See *Menger v. Ward,* 87 Tex. 622, 30 S.W. 853; *Hosford v. Metcalf,* 113 Iowa 240, 84 N.W. 1054."

If Prochemco could exercise an option when "X" owns the land, should it not be able to do likewise when "Y" owns the land? If we are to assume that the parties intended that the option clause had some meaning and purpose when inserted into the gas contract, and we are to give effect to all the clauses within the four corners of the instrument, we must conclude that the bargain as originally struck gave Prochemco a valid option at the time the contract was made in August, 1970, when Coyanosa owned the land. Since, the option was unassignable, it could be exercised only by Prochemco. If it could be exercised when the land was owned by Coyanosa, and Prochemco had no record title to the land, should it not be exercisable when Eiland owned record title and Prochemco apparently had a one percent interest in the land? If one concludes that the option could not be exercised in 1975 when Prochemco owned only a one percent interest, what was intended when the option was given in 1970 at a time when Prochemco had no ownership in the land?

We conclude that Prochemco properly exercised a personal option which it retained even after its subsidiary sold the land described in the Gas Sales Contract. To reach any other result, we must conclude that when the parties agreed in 1970 upon an assignable contract, they in fact meant that an option was given only if the contract was assigned to Prochemco. The parties did not so restrict the assignment of the contract, and we may not now add such a restriction.

Prochemco is entitled to a declaratory judgment in its favor. We reverse the judgment of the trial Court and remand the case to the trial Court for the entry of a declaratory judgment in favor of Prochemco in accordance with this opinion.