ARTHUR SULLIVAN *et al.* v. THE CITY OF· WICHITA
*et al.*

|64|539|
|e69|271|

No. 12,028.   (68 Pac. 55.)

SYLLABUS BY THE COURT.

1. HOMESTEADS AND EXEMPTIONS—*Alienation—Joint Consent.*
The joint consent of husband and wife to the alienation of their
homestead, required by the constitution, need not be in writing,
but may be evidenced by acts *in pais* showing a concurrence be-
tween them in point of time and intent to the alienation.

2. ―――― *Water Easement—Sufficient Evidence of Joint Con-
sent to Alienation.* An arbitration agreement, signed by a hus-
band and wife on the one side and other persons on the other side,
which describes the subject of the arbitration as the damages accru-
ing and about to accrue to the homestead of the former on account
of the erection of a water dam and the excavation of an aqueduct
thereon by virtue of a "grant" made by the husband and wife,
which agreement is followed by an award of damages and its pay-
ment, the building of the dam and the digging of the aqueduct at
much labor and expense, all with the knowledge and consent of
the husband and wife, and the use of the water easement for
many years without objection by them, together constitute suffi-
cient and satisfactory evidence of joint consent by the husband
and wife to the alienation of an irrevocable grant of easement on
and over their homestead.

Error from Sedgwick district court; D. M. DALE,
judge.   Opinion filed March 8, 1902.   Affirmed.

*Amidon & Conly*, and *H. G. Ruggles*, for plaintiffs in
error.

*A. E. Helm*, city attorney, and *Smyth & Helm*, for
defendants in error.

The opinion of the court was delivered by

DOSTER, C.J. :   This was an action brought by Ar-
thur and Agnes Sullivan, husband and wife, against
the City of Wichita for damages for erecting a water
dam on the plaintiff's homestead and flooding a por-

tion of it thereby, and for diverting water from it through an aqueduct or raceway. The defenses were several in number : (1) A conveyance by plaintiffs to defendants' grantors of a right to erect and maintain the dam and waterway ; (2) estoppel on account of the erection of the one and the digging of the other by defendants' grantors at much labor and expense, with the plaintiffs' knowledge and consent; (3) an arbitration with defendants' grantors of the damages resulting from the appropriation of the water easement, an award thereof and its payment; (4) adverse user of the easement for more than fifteen years. A small judgment was rendered in plaintiff's favor on account of the overflowing of their land by the recent raising of the dam to a greater height than formerly built. The plaintiffs, however, claimed damages on account of the original act, and being denied a recovery therefor they have prosecuted error.

In November, 1873, one E. L. Wheeler and one L. G. Scheetz became possessed of an instrument of writing signed by the plaintiff, Arthur Sullivan, and purporting to be signed by his wife, Agnes Sullivan. It was in the form of a deed, with the following granting clause :

"Have granted, bargained, and conveyed, and by these presents do hereby grant, release, and convey, unto the said parties of the second part and to their heirs and assigns forever the right to build and maintain a dam across the stream known as the Little Arkansas river, at a point at or about eight rods up said stream from the point where said stream crosses the west line of the southeast quarter of the southwest quarter of section twenty-nine (29), in township twenty-six (26) south, of range No. one (1) east, in Sedgwick county, Kansas, and also the right to dig, excavate and maintain an aqueduct or mill-race not more than sixty feet wide running from said above-

described point of location of said dam in a southeasterly direction to the section line running east and west between said section twenty-nine and said section thirty-two of said township, so that said race shall strike said section line not farther east than the quarter-section line corner between said sections, and running thence east on said section line to the stream known as Chisholm creek, in said county; together with the right to enter upon said premises to erect, construct, operate or repair said dam and mill-race. To have and to hold the right and easement hereby granted unto the parties of the second part, their heirs, legal representatives, and assigns."

Mrs. Sullivan testified on the trial of the case that she never signed or anywise consented to the above instrument of writing, and, despite one or two circumstances indicating to the contrary of her testimony, it is probable that she did not; therefore the writing, viewed as a conveyance of the easement in question, will be laid out of consideration. However, in January, 1874, about two months after the purported execution of the above-quoted deed, both the Sullivans entered into an arbitration agreement in writing with the before-mentioned Wheeler and Scheetz concerning the easement as a subject of controversy between them. In that agreement arbitrators were chosen for the following purpose, quoting its language,

"to hear all the proofs and allegations of the parties of and concerning the amount of injury and damages accruing to the said parties of the first part and to a certain tract of land of the parties of the first part accruing or about to accrue and suffer (and which is hereinafter described) by virtue of a grant by the parties of the first part to the parties of the second part of a franchise, easement, privilege and right to the parties of the second part to build, erect and forever maintain a dam across the stream known as the Little Arkansas river, at or about eight rods up said stream

from the point where said stream crosses the west line of the southeast quarter of the southwest quarter of section number twenty-nine (29), in township twenty-six (26) south, of range number one (1) east, in Sedgwick county, Kansas, and also the right to dig, excavate and maintain an aqueduct or mill-race not more than sixty (60) feet wide, running from said above-described point of location of said dam in a southeasterly direction to the section line running east and west between said section twenty-nine (29) and section thirty-two (32) of said township, so that said race shall strike said section line not further east than the quarter-section corner between said sections, and running thence east on said section line to the stream known as Chisholm creek, in said county, together with the right to enter upon said premises to erect, construct, operate or repair said dam, aqueduct, or mill-race."

An arbitration was had pursuant to the foregoing agreement, and an award was made in favor of the Sullivans, and paid. It will be observed that the agreement stated the subject of the arbitration to be the damages accruing to the Sullivans by virtue of a grant made by them to Wheeler and Scheetz to erect and maintain a dam and to excavate and maintain an aqueduct on certain land, the description of which is identical in words with those used in the purported deed before quoted. Wheeler and Scheetz soon thereafter entered on the land and, with the knowledge and consent of the Sullivans, built the dam and dug the waterway. The Sullivans boarded some of the laborers engaged in doing the work, and Sullivan himself performed part of it. The easement was never abandoned, but has been maintained to the present time by the original owners and several successive grantees from them, and has now passed to the city of Wichita. The city purchased it to use the water for flushing sewers and other purposes.

The above summarizes the main features of the case. There are, of course, portions of the record which to triers of the facts might cast doubt on some of the matters stated, but these were resolved against the plaintiffs by the general finding made in the court below.  We are unable to perceive any error in the record.

One of the main contentions of the plaintiffs in error is that, inasmuch as the deed to Wheeler and Scheetz before quoted was not signed by Mrs. Sullivan, there was not that joint consent of husband and wife which the constitution requires in order to the alienation of homestead interests.  That is true.  That paper did not evidence the joint consent of Sullivan and wife, but the abitration agreement, the acceptance of the award, the entry into possession of Wheeler and Scheetz, the building of the dam, the digging of the aqueduct, the maintenance of possession, and the use of the easement, all with the knowledge and consent of both Sullivan and wife, did constitute a joint consent by them.  The cost of the work done by Wheeler and Sheetz is probably stated in the evidence, but we have not searched through the voluminous record to find it and ascertain the amount.  The award of damages paid by them was $350, and we are entitled to assume as a matter of common knowledge that the cost of the work done to make the grant of the easement available was considerable.

It has been held in this state that the joint consent of husband and wife to the alienation of the homestead is not of necessity to be given in writing.  It may be given orally and evidenced by acts *in pais*, and if so given and evidenced the homestead claimants will not be heard to deny it.  That was distinctly so ruled in *Perrine v. Mayberry*, 37 Kan. 258, 15 Pac.

172. In that case a husband and wife were the equitable owners of a tract of land occupied by them as a homestead. They jointly but orally contracted with another to sell a portion of it and to execute a deed to it when they should receive the legal title. They put him in possession of the portion stated, received from him the purchase-money for it, and permitted him to make lasting and valuable improvements on it. When they received the legal title they refused to execute their agreement. It was held in the closing words of the syllabus that "A court of equity has the power to, and will, enforce a completion of the alienation and a specific performance of the contract." In the closing paragraph of the opinion it was said:

"Again, neither the statutes nor the constitution requires that the alienation of a homestead with the joint consent of the husband and wife must be in writing. Of course, the joint consent must exist before any voluntary alienation of the homestead. In this case, there was the express joint consent of the husband and wife. (Const. art. 15, § 9; Comp. Laws of 1879, ch. 38, § 1.) Upon that joint consent, the purchase-money was paid, possession was taken, lasting and valuable improvements were made. Mayberry cannot now be robbed of the fruit of his toil and outlays by the refusal of Mrs. Perrine to sign the deed."

The present case is a stronger one against the homestead claim than the one from which the above quotations are made. In this case there was that which approached very nearly to a written joint consent. The arbitration agreement recited "a grant by the parties of the first part to the parties of the second part," and it stated the subject of the arbitration to be a claim of damages accruing by virtue of such grant. The difference in legal effect between a consent to the arbitration of the amount of consideration

for the making of a grant, and a consent to the grant itself, is not readily perceivable.  If there be a difference, it is one of evidence merely.  The instrument of grant would be, of course, the most nearly conclusive in legal effect; lacking that, a recital in another instrument of the making of the grant would be the next in order of cogency and weight.  It would not, be of itself conclusive, but when shown to have been made, and shown to have been acted on by both parties as though its recitals were true, it and the action taken on it would furnish clear and satisfactory evidence of the consent which the homestead laws require.

A multitude of claims of error are made.  Most of them are subsidiary and incidental to the one above discussed, and some others are of a minor and unsubstantial character.  The court struck out certain paragraphs of the plaintiffs' reply.  The court did right. Portions of the reply stricken out tendered issues of law instead of fact.  Other portions plead a contract between the city and Arthur Sullivan, and a stipulation entered into during the progress of the case relative to a change of the pleadings and the form of the action.  They were urged as estoppels, but they were not.  Still another claim of error was that the easement in question was personal in its nature, was a mere license to the first grantee, and did not pass by the subsequent conveyances.  This is clearly untenable.  It would subserve no useful purpose to explain the facts underlying these and other claims of error and set forth the law pertaining to them.  The one matter above discussed involves the principal question in the case.

The judgment of the court below is affirmed.

Johnston, Ellis, Pollock, JJ., concurring.