HARRIET B. TAYLOR *et al.* V. E. H. TAYLOR.

No. 15,725.   (99 Pac. 814.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Specific Performance of Oral Agreement to Convey Land—Possession.* Where it is sought to enforce a parol contract to convey lands, and possession is relied upon as part performance, the rule that the possession must be exclusive is satisfied where it is shown that the possession was as exclusive as the terms of.the contract would permit.

2. ———— *Same.* A parol contract was entered into · between parents and a son sixteen years of age, to the effect that the son was to continue to live with the parents on the farm and provide a home for them and support them so long as they lived, in consideration of which they agreed that he should have the land at their death. Pursuant to the agreement the son was placed in the possession of the land by the parents, and continued in the possession until the father's death, which occurred when the son had reached the age of thirty-four. The son devoted the entire rents and profits of the land to the. support of his parents until the death of his father, and after that to the support of his mother. He paid the taxes and made lasting and valuable improvements thereon, and fully performed all the conditions of the contract on his part. In a suit for partition, brought by the heirs of the father, *held,* that the· son was entitled to a decree declaring him to be the owner of the land, subject to the rights of the mother to the use and enjoyment of the rents and profits during her lifetime, and subject to the condition that he continue to do and perform all the conditions and terms of the contract during her natural life.

3. PRACTICE, SUPREME COURT—*Immaterial Error.* The duty is enjoined upon this court to refuse a reversal for errors which do not affect the substantial rights of a party. (Civ. Code, § 140.)

4. EVIDENCE—*Trial to 'the Court—Exclusion of Competent Testimony.* Where the trial is to the court, and findings are made which are supported by the evidence, the exclusion of testimony competent under the pleadings will not be held to be reversible error where it is apparent that if the excluded testimony had been admitted it could not have affected any material fact found,. and that no other or different judgment would have been proper under the findings.

.11.—79 KAN.

Error from Norton district court; WILLIAM H. PRATT, judge. Opinion filed December 12, 1908. Affirmed.

*L. H. Wilder,* for plaintiffs in error.

*L. H. Thompson,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Charles Taylor, a resident of Norton county, died on the 21st day of February, 1904, and left as his heirs his widow, Harriet B. Taylor, one daughter and six sons. His possessions consisted of a farm of 160 acres and some personal property of small value. On the day prior to his death he attempted to make a will devising his property to one of his sons, E. H. Taylor. The will was afterward duly probated.

This suit was begun May 21, 1906, by Harriet B. Taylor, the widow, who joined the daughter and three sons as plaintiffs against E. H. Taylor and two other sons as defendants, to set aside the will and partition the. land. E. H. Taylor, hereafter referred to as the defendant, answered, claiming title to the land under a contract which is referred to in the findings. The cause was tried to the court, and a judgment was rendered declaring the defendant to be the owner of the land, subject to the life-estate of Harriet B. Taylor and the further performance on his part of the terms of the contract under which he claimed title. The plaintiffs seek to reverse this judgment. The validity of the will is not involved, it being conceded that it was not properly executed.

The court made very complete findings of fact, among which are the following: That in 1886 Charles Taylor and wife entered into an oral contract with their son, the defendant, then about sixteen years old, to the effect that the son was to remain with and care for and support his parents and furnish them a home while they

lived, in consideration of which he should become the owner at their death of the land, and that the parents would make the necessary arrangements to that end. At the time the contract was entered into Charles Taylor, the father, was practically without funds; he suffered with ill health and was physically unable to perform manual labor, which condition continued during the remainder of his life. At this time the land in controversy was government land, held under a homestead entry, and the defendant paid the land-office fees for entry and final proof. Pursuant to the contract he was put into the possession of the land by his parents, and has ever since been in such possession. During the greater portion of the time since the contract was made the family at home consisted of the parents, the defendant and a brother who was an invalid, the other children having left their parents to the care of the defendant and gone out to do for themselves. The defendant devoted the entire rents and profits of the land to the support of the family at home until the death of his father, and after that to the support of his mother; he paid the taxes on the land, and made lasting and valuable improvements thereon, and fully performed all the conditions of the contract. The contract was renewed and ratified by the parties thereto after the defendant had attained his majority. The court held the will of Charles Taylor to be invalid for the reason that it was not signed by the witnesses in his presence, but further found that it was executed by him when he was of sound mind and in possession of all his faculties, and that he intended thereby to carry out the terms of the oral contract with the defendant, and so declared his intention; that his intention in this respect was known to Harriet B. Taylor, who then and afterward expressed her approval thereof; that from and after the death of the father the mother continued to live with the defendant and be supported by him, frequently reaffirming the contract, until about May 30, 1905, when

bitterness and ill feeling arose between the defendant and two of the brothers who opposed his claims, and the mother was induced to refuse to remain with him, and without his fault she left his home to reside with another son. The court found that the defendant has at all times been ready and willing to carry out his part of the contract, and has only been prevented from so doing by the refusal of Harriet B. Taylor to live with him. These are in substance the facts found by the trial court which it is claimed are unsupported by the evidence.

The particular point urged is that the evidence does not show that defendant had exclusive possession of the land, but we think the court rightly held that his possession was as exclusive as the terms of the contract and the circumstances admitted. The contract bound him to provide a home for his parents, and it was doubtless in the contemplation of the parties that the place should be occupied as the home. This is sufficient to distinguish the case from *Baldwin v. Baldwin,* 73 Kan. 39, 84 Pac. 568, 4 L. R. A., n. s., 957.

We have examined the record with care and in our opinion the evidence supports the findings. The conclusion reached by the court necessarily follows.

The only other contention which requires notice is the refusal of the court to admit certain testimony offered by plaintiffs for the purpose of showing that unlawful relations existed between the defendant and a woman employed by him at the house which justified his mother in refusing to remain with him. The same facts were set up in the reply by way of avoidance of the parol contract, the plaintiffs' theory being that if there was a contract, which they denied, then by its terms the defendant was bound to furnish his mother a suitable home, and that his conduct rendered his home unsuitable for her and constituted a breach of the contract on his part. From this view of the case the testimony would appear clearly competent for the pur-

Taylor v. Taylor.

pose for which it was offered. But in any view that may be taken its exclusion can not be regarded as error requiring a reversal. The duty is enjoined upon this court to refuse a reversal for errors which do not affect the substantial rights of a party. (Civ. Code, § 140.) The cause was tried to the court, and the situation can not be regarded quite the same as if it had been tried to a jury and the evidence excluded. The court had all the parties before it and heard the witnesses. It already appeared from the evidence that for some time after the father's death there was no ill feeling or dissension in the family, but, on the contrary, complete acquiescence in the claim of defendant that the land was his under the contract. The mother was satisfied with the home provided for her, and the kindest of feeling existed between her and the defendant. Afterward, when some of the members of the family began to object to defendant's claims, strife and contention and bitterness resulted. The mother at this time was seventy-seven years of age, frail, and in feeble health, and, as the court found, easily persuaded, by those of her children who sought to set aside the agreement, to leave the defendant's house and refuse to live with him. In view of all the facts and circumstances, doubtless the court was inclined to discredit the story in advance, and for these reasons may have refused to hear it.

That the exclusion of this testimony could not have affected the substantial rights of the parties is obvious, however, from other considerations. It must be remembered that at the time of the alleged misconduct of the defendant the contract was no longer executory. For twenty years the defendant, the court found, had performed his part with rare fidelity and commendable faithfulness. All that remained for him to do to entitle him to the land was to furnish a home and provide for his mother during the few remaining years of her life. Upon the findings of the court the defendant was en-

titled to the judgment which the court rendered, and, in our opinion, if the excluded testimony had been admitted the same judgment should have been given. The rights of Harriet B. Taylor were fully protected by the terms of the decree, which does not give the land to the defendant absolutely, but upon condition that he continue to perform the contract on his part and furnish her a home. It would require a strained construction of the contract to hold that it could only be performed on the part of the defendant by his providing a home for his mother with himself. If such were the case she might prevent performance by her refusal to live with him. If, after the death of the husband, the mother for any reason preferred to make her home with some other member of the family or elsewhere, she should have the right to do so, but it would be unreasonable to hold that by doing this the rights of the defendant under the contract were forfeited or his obligations changed. His obligation to furnish her a home suitable to her wants and condition in life and to provide for her support continues. And this obligation is recognized and its performance fully provided for in the judgment which the trial court rendered. That the court fully protected not only the rights of Harriet B. Taylor but those of all the parties is apparent from the terms of the decree. Subject to the rights of Harriet B. Taylor in the use and enjoyment of the rents and profits of the land during her lifetime, the defendant is declared to be the owner and entitled to the possession thereof, provided, however, that he continue to do and perform all the conditions and terms of the contract during her natural life. The decree further declares that none of the other children has any interest in or to the land so long as the terms and conditions of the contract are complied with on the part of the defendant, and partition is refused. It is obvious that if the excluded testimony had been admitted, and even if its truth had been conceded, it could not have affected

any material fact found, and no other or different judgment would have been proper under the findings, which, as we have observed, are abundantly supported by the evidence.

For these reasons the judgment is affirmed.