No. 19,141.

THE PUTNAM INVESTMENT COMPANY, *Appellee*, v. H. C. KING, *Appellant*.

SYLLABUS BY THE COURT.

1. AGENCY—*Sale of Public Lands—Contract—Commissions*. In the employment of a broker to procure a purchaser for certain lands it is held that the agreement did not contemplate a sale of public lands in contravention of the federal laws.

2. SAME—*Purchaser Procured—Owner's Ground for Refusal to Complete Sale—Waiver of Other Grounds*. A competent purchaser was procured by the broker, and when the landowner was notified that one had been found that was ready, able and willing to buy the land on the agreed terms he refused to complete the sale, basing his refusal upon certain objections, and upon the trial of an action brought by the broker to recover the commission the landowner asserted other grounds. *Held*, that having put his refusal to complete the sale on particular grounds he, in effect, waived any defenses based upon other grounds. *Held, also*, that the reasons asserted when the refusal was made or those subsequently set up in the trial were not good grounds for his refusal.

3. SAME—*Agreement to Convey Land—Warranty Deed Implied*. If an agreement for the sale of land does not specify nor indicate the character of the conveyance to be made the law will imply that a deed with the usual covenants of warranty is to be executed.

Appeal from Jackson district court; OSCAR RAINES, judge. Opinion filed July 10, 1915. Affirmed.

*W. F. Challis*, of Westmoreland, *Lee Monroe, James A. McClure*, and *C. M. Monroe*, all of Topeka, for the appellant.

*C. W. Burch*, and *B. I. Litowich*, both of Salina, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by The Putnam Investment Company, a corporation engaged in the real-estate brokerage business, against H. C. King for the recovery of a commission. From a judgment in favor of the plaintiff King appeals.

The case has been here twice before (*Putnam v. King*, 82 Kan. 216, 107 Pac. 559; 87 Kan. 842, 126 Pac. 1093), and in the former of these appeals the principal facts involved are con-

cisely stated. King owned 2720 acres of land and in connection with this land he used 160 acres of government land upon which his son had filed. He verbally agreed with the manager of the plaintiff to the effect that plaintiff should find a purchaser for the land and retain all over $8000 as commission. A party able and willing to purchase the interest which King had in the land for $10,800 was found by the plaintiff, and King then declined to make a conveyance. After several trials in the Pottawatomie district court a change of venue was granted and the case was tried in Jackson county, resulting in a judgment for the plaintiff. Defendant's demurrer to the evidence of plaintiff was overruled as was also his motion for a new trial.

It is first insisted that the plaintiff can not recover because the contract made by plaintiff in behalf of defendant included the sale of government land. It sufficiently appears that no one contemplated a sale or purchase of public land. When the contract was made between plaintiff and defendant it was mentioned that 2720 acres was subject to sale and that 160 acres used in connection with the larger tract was government land upon which the defendant's son had a filing. Of course, any attempt to sell or mortgage government land is contrary to statute as well as public policy and would be without effect. While this quarter section of land was spoken of as a part of the ranch it was understood that it was government land and therefore not subject to sale. It was equally well known that improvements as well as certain preferences of one having a filing upon government land were subject to be transferred. It has been said that:

"Under the laws of the United States, and the rules of the land department, the entryman is entitled to commutation in several forms, and to certain preference rights, and may also relinquish and sell his improvements and equities in the homestead to another. The relinquishment must, of course, be made to the United States; but under the rules and practice of the land department it may be made so as to fully protect the transferee, if he be a qualified person, to the same right which his vendor enjoyed." (*B. K. & S. W. Rld. Co. v. Johnson*, 38 Kan. 142, 151, 16 Pac. 125; *James S. Moore v. Daniel M. McIntosh*, 6 Kan. 39; *Bell v. Parks*, 18 Kan. 152; *Lapham v. Head*, 21 Kan. 332; *Hardesty v. Service*, 45 Kan. 614, 26 Pac. 29.)

There was some talk between the parties about the son perfecting his title or giving a relinquishment if it was not per-

fected, but the evidence of the plaintiff was that the purchaser was to get just such interest as the defendant could give, and if he had no interest in the tract the purchaser would get nothing. When the plaintiff bargained with the proposed purchaser a writing was made which purported to include 2880 acres, and the plaintiff attached the defendant's name to the writing without authority. This writing was, of course, invalid in that it included the 160-acre tract of government land, but that writing is not the basis of this action. The action brought rests upon the agreement that plaintiff was to find a purchaser for the four and a quarter sections of land and such interest as the defendant might have in the other quarter, together with the compliance by the plaintiff with the terms of that agreement. The plaintiff and the purchaser soon discovered that the writing as drawn was invalid, and it was never brought to the attention of defendant nor did he learn of the existence of the writing until after the litigation had been begun. Besides, the agreement actually made with Shellabarger, the purchaser, did not undertake to sell government land nor to make a transfer of it in contravention of the federal laws. It may also be said that defendant did not decline to carry out his agreement nor to transfer the land to the purchaser on account of the terms of this writing, and he could not well have based his refusal on that ground as he admitted that he did not see the contract until the first trial of this case.

The next contention of the defendant is that the plaintiff did not procure a purchaser for the land who was ready and willing to buy on the terms agreed upon. There is no substantial dispute that the plaintiff was empowered by defendant to find a purchaser for the land and very little as to the terms of the agreement made between them when the land was listed with plaintiff. The defendant prescribed several plans on which a sale might be made, one of which was that if sold for cash he would take $8000 net, the plaintiff to have any additional sum that it could procure as commission. In a letter written about four months later the defendant repeated the statement and said to the plaintiff, "You can have all you get over $8000." The plaintiff found a purchaser who offered to pay $10,800 for the land, and who then made a payment of $1000 to the plaintiff as the agent of the defendant. When the defendant was notified that a purchaser had been procured on

the prescribed terms he raised a number of objections and indicated a purpose to avoid compliance with the contract. He first raised a question as to the description and extent of the tract that he had for sale, saying that plaintiff had either sold land which had never been given it for sale or had made an error in the description of the land offered to the proposed purchaser. He also said that he had given an option to a party on his 2720 acres. Defendant insists that while plaintiff had found one who was willing to take the land at the specified price the purchaser had made a requirement that defendant should furnish an abstract of title and should execute a warranty deed to the land, and that neither of these conditions had ever been agreed to by the defendant. In the first place the defendant did not refuse to complete the sale on either of these grounds. He never mentioned them when plaintiff notified him that a purchaser had been found and when the request was made that he complete the sale. His refusal was based upon the grounds that more land was sold than he owned and that he had given an option to another upon the land listed with the plaintiff. Having put his refusal on these grounds he, in effect, waived any defense based on the requirement of an abstract or of the form of the conveyance to be executed. As said in *Sandefur v. Hines,* 69 Kan. 168, 76 Pac. 444:

"It is not becoming in him to place his refusal on one ground, and, when the plaintiff has been driven into litigation to enforce the contract, to defend his refusal on another and wholly different ground." (p. 171.)

In a later case it was said:

"If this had been a reason for refusing to complete the sale he should have so stated at the time, so that the other party might know what was lacking and possibly correct it." (*Stanton v. Barnes,* 72 Kan. 541, 544, 84 Pac. 116.)

Aside from this consideration it appears that the furnishing of an abstract of title was not insisted on by the plaintiff or the purchaser. In a letter of plaintiff notifying defendant of the sale it was said that the purchaser was ready to close the sale as soon as abstracts showing clear title were received, and in another letter defendant was requested to "forward abstracts of this land for examination and advise us when you will be here to close sale." In his replies to these letters defendant never mentioned this detail of the transaction, and the plaintiff advised the purchaser that if defendant did not fur-

nish abstracts the plaintiff itself would do so.   There was, in fact, no controversy over abstracts and it can not be regarded as a real issue in the case.

Neither was there any basis for his refusal to complete the sale because of the form of the deed conveying defendant's interest in the land.   This defense was an afterthought.   In none of his letters did the defendant speak of the kind of a conveyance that was to be made of his land, and there was no stipulation on this subject in the agreement under which the land was listed for sale with plaintiff.   While no mention was made as to the form of conveyance to be executed it has been held that:

"In the sale of real estate it is not necessary in this state that the form of deed be contracted for.   In the absence of express stipulations covering the subject a deed with the usual covenants of warranty is implied."   (*Dewey v. Hines,* 87 Kan. 834, syl. ¶ 1, 126 Pac. 1093; 39 Cyc. 1556.)

Although a warranty deed was mentioned in the writing made with the purchaser by plaintiff this memorandum was recognized by both plaintiff and purchaser to be invalid and was not even presented to defendant.   It was understood throughout the dealings that defendant did not have a complete title to all of the land as part of it was held under a contract with the railroad company, and also that a quarter section of the same was government land upon which defendant's son had a filing.   In one of plaintiff's letters to the defendant it was stated that the purchaser would take assignments of railroad contracts under which defendant held a part of the land. The purchaser was, however, ready to take the title which defendant had represented that he held when the land was listed for sale with the plaintiff, and, besides, the defendant did not misunderstand the agreement nor the disposition or ability of the purchaser to take the land on the agreed terms.

It is true that plaintiff did not have the exclusive right to sell the land and that if defendant had made a sale of the land before the plaintiff had found a purchaser the defendant would not have been liable to pay a commission to plaintiff, but it is conceded that he never effected a sale of the land.   He speaks of having given an option of purchase to some one, but he admitted that the option had expired before the correspondence

as to the closing of the sale made by plaintiff had ended. Aside from this consideration the defendant did not plead that a sale of the land had been made to another as a defense. Of the agency of the plaintiff there is no question, and that a pur-. chaser was procured able, ready and willing to take the land upon the agreed terms was well established. The defendant was notified that a competent purchaser had been procured. The reasons advanced by him for declining to accept the purchaser and complete the transaction are obviously insufficient. The plaintiff's part of the agreement was substantially carried out and the commission was earned.

We find nothing material in the objections to the rulings on the admission of testimony nor in the instructions of the trial court.

. The judgment is affirmed.