## No. 25,718.

M. E. EAKIN, *Appellee,* v. WILL H. WYCOFF et al., *Appellants.*

### SYLLABUS BY THE COURT.

SPECIFIC PERFORMANCE—*Parol Contract to Convey Real Estate—Joint Consent of Husband and Wife—Statute of Frauds—Part Performance.* In a suit by the vendee for the specific performance of a parol contract to convey real estate, the record is examined and it is *held:* (*a*) that the contract is not so indefinite as to render specific performance impossible; (*b*) there is sufficient evidence to support the finding of the court of the joint consent of husband and wife to the alienation of the homestead; and (*c*) that there was sufficient part performance by the vendee to take the case out of the statute of frauds; and further *held,* that there was no such laches or failure to perform on the part of the vendee nor such harshness of bargain as prevented a decree of specific performance.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed March 7, 1925. Affirmed.

*John J. Jones,* and *Hugo T. Wedell,* both of Chanute, for the appellants.
*T. R. Evans,* of Chanute, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a suit for specific performance. It was tried to the court, who made findings of fact and conclusions of law and rendered judgment for plaintiff. The defendants have appealed.

The petition filed in June, 1923, alleges in substance that in March, 1922, plaintiff was the owner of 375 shares of the capital stock of the Great Northern Oil and Petroleum Company, and 125 shares of the capital stock of The Wapello Oil and Gas Company, each of the par value of $100; that defendants were the owners of certain described real property in Chanute; that plaintiff and defendant Will H. Wycoff entered into a parol agreement whereby defendants exchanged the real property owned by them, subject to a $5,000 mortgage thereon, which plaintiff was to assume, and pay plaintiff $2,000 in cash for the shares of stock owned by plaintiff; that the certificates of the shares of stock were to be held by plaintiff until the $2,000 was paid; that within sixty days from making the agreement the defendants vacated the real property and delivered possession thereof to plaintiff, but through inadvertence the plaintiff failed to require deed; that since the exchange of properties de-

fendants have exercised dominion and control over the stock transferred to them and have voted the same at a stockholders' meeting and have received and accepted the benefits flowing from the ownership thereof, and the plaintiff has at all times been in possession and control of the real property with the knowledge and consent of defendants; that in March, 1923, plaintiff being indebted to one Robinson, made to him a quitclaim deed for the real property, and in June, 1923, plaintiff had an opportunity to sell the real property to one Bray, and that defendants executed a deed to the property at that time, subject, however, to a certain stipulation signed by plaintiff and defendants. This stipulation recites, in substance, that defendants have made a quitclaim deed to Robinson for the property in controversy, which was to be placed in escrow in a named bank under a contract for the sale of the property by Robinson to Bray; that if the sale of the property is not completed the deed should be returned to defendants, otherwise to be delivered to Bray. The sale to Bray was for $7,500 above the mortgage, which sum, less the taxes and expense of sale, was to be paid to defendants, and it contained this provision:

"It is understood that M. E. Eakin is making some claim to said property, and unless he makes some adjustment of said claim with Will H. Wycoff, or commences some legal proceedings to assert said claim within thirty days from the date hereof, he is to be considered as having waived all such claim to said property. If any legal proceedings are brought, then the disposition of said money by said John L. Robinson shall abide the decision of said controversy."

This was accepted and agreed to by Robinson.

Plaintiff further avers that he had at all times been ready and willing to deliver the certificates of stock and they were tendered into court, and that defendants had refused to make a deed in accordance with the contract and refused to pay the $2,000 due plaintiff thereunder. The prayer was that the defendants be decreed to have no right in the fund impounded under the stipulation, that they be ordered to execute a deed to the property, and that plaintiff have judgment against them for $2,000.

The answer admitted the ownership of the properties in March, 1922, as alleged in the petition, but denied the other allegations of the petition; averred that the real property described in the petition was the homestead of defendants and there had been no joint consent for its alienation; alleged laches on the part of plaintiff; and that

it would be equitable and unjust to enforce specific performance because of the decrease since March, 1922, of the value of the shares of stock and the increase in the value of the real property; and averred that defendants were entitled to the funds impounded by the stipulation. To this answer the plaintiff filed a general denial.

At the conclusion of the evidence the court made findings of fact as follows:

"1. Sometime in the month of March, 1922, in the city of Chanute, Neosho county, Kansas, the plaintiff, M. E. Eakin, and the defendant, Will H. Wycoff, entered into an oral agreement for the exchange of property, in which the defendant, Will H. Wycoff, was to transfer to M. E. Eakin the south thirty feet of lot 6 and the north thirty-five feet of lot 7, and the south thirty feet of lot 5, and the north twenty-five feet of lot 6, all in block 6, Allen's addition to the city of Chanute, Kansas, subject to mortgage of $5,000, which Eakin assumed and agreed to pay, and to pay M. E. Eakin the sum of two thousand dollars, for all of which the said M. E. Eakin was to transfer to the said Will H. Wycoff three hundred and seventy-five shares of stock in the Great Northern Oil and Petroleum Company and one hundred and thirty-five shares of stock in the Wapello Oil and Gas Company.

"2. The real property above described owned at the time of said oral agreement by Will H. Wycoff and Maude Wycoff, his wife, was occupied by them as their homestead.

"3. On May 11, 1922, pursuant to said agreement, Will H. Wycoff and Maude Wycoff, his wife, moved out of said property and occupied rental property thereafter and never returned to their former residence to occupy the same. Two of the keys to the house were delivered to M. E. Eakin through the son of the plaintiff. The Wycoffs never claimed any ownership or right of possession over said property from the time they left the same in pursuance of said contract until on or about the 10th day of May, 1923, when Will H. Wycoff by letter notified the plaintiff herein that the deal they had talked of fourteen months previous thereto was null and void.

"4. The plaintiff is a resident of Grove City, Pennsylvania, and never did move into the property or rent the same. But during the months that intervened from the time of the said oral agreement in March, 1922, until the date on which Wycoff by letter attempted to call the deal off, the said plaintiff paid the taxes on said property for the years 1921 and 1922, and paid for the insurance on the garage on said described real estate. This insurance that was paid for on the garage was ordered during the month of May, 1922, by Wycoff, and the policy made out to Eakin at the request of the said Wycoff, and the premium on the same was paid by the plaintiff, Eakin. During said period said plaintiff paid the interest on the mortgage of five thousand which was existing on the real property and which was in existence at the time of the contract between the parties.

"5. During the period above stated the said Maude Wycoff, wife of the defendant Will H. Wycoff, was consenting and acquiescing in the agreement made between her husband and M. E. Eakin in March, 1922, to the real

estate herein described. Her husband testified that he talked the matter over with her about the trade so that she knew about it and moved out of her home in pursuance thereof.

"6. On the 22d day of March, 1923, M. E. Eakin made a deed to the property to J. L. Robinson as security for a debt that he then owed him, and soon thereafter, during the month of April, 1923, Wycoff stated to said Robinson that he would make a deed to him, Robinson, and which had been requested by Eakin, but afterwards he refused to make such deed.

"7. The shares of stock of the two oil companies above mentioned which were to be transferred to Wycoff for the real property were never delivered until they were mailed to Wycoff by registered letter on the 13th day of June, 1923, which tender was refused by Wycoff.

"8. On the 7th day of May, 1923, M. E. Eakin mailed a letter to Wycoff to Grove City, Pennsylvania, which was received by him in which Eakin said that the Wapello stock was enclosed, but had not enclosed said stock, and on that same date M. E. Eakin mailed to Wycoff at Chanute, Kansas, the Wapello shares of stock and Wycoff refused to take said letter out of the office and it was returned to the plaintiff. The letter first above referred to was received by Wycoff on the 10th day of May, 1923, and upon receipt of the same Wycoff immediately wrote a letter to Eakin stating to him that the deal was off. This was the first time that Eakin knew or had any notice from Wycoff that Wycoff would not close the deal.

"9. The condition as to title of all the property remained the same as before indicated until this action was brought, which was on the 20th day of June, 1923.

"10. On the 13th day of June, 1923, T. R. Evans, attorney for M. E. Eakin, plaintiff, tendered the shares of stock contemplated in the agreement, .by registered letter, to Will H. Wycoff at Chanute, Kansas, tendering him the shares of stock. The said stock was returned to said T. R. Evans by Jones & Wedell, attorneys for Wycoff, three days after said tender above indicated.

"11. At the time of the said oral contract between the parties it was agreed that Wycoff should pay two thousand dollars in addition to the real estate for the shares of stock above described. This amount never was paid, and there was no definite agreement as to when it should be paid at the time of the agreement. The plaintiff Eakin afterwards offered to take a note for the said amount, but it was never so done. The payment of the two thousand dollars was left the same as the other property, incomplete, as to the performance of that part of the contract.

"12. [This finding pertained to the making of the stipulation for the sale to Bray, as alleged.]"

And the following conclusions of law:

"1. As a matter of law, the court finds on the above facts that the plaintiff had the exclusive and continuous possession of said real property from the 11th day of May, 1922, at which time the defendant moved out of said property.

"2. The court finds there was a joint consent between Will H. Wycoff and Maude Wycoff, his wife, to alienate the homestead as provided in the said oral agreement between the plaintiff and the said defendant, Will H. Wycoff.

"3. The plaintiff is entitled to specific performance of the contract, which should be granted, and judgment should be rendered in favor of the plaintiff and against the defendants for the sum of two thousand dollars and costs.

"Plaintiff is further entitled to a deed from the defendants to the south thirty feet of lot 5 and the north twenty feet of lot 6, block 6, Allen's addition to the city of Chanute, Neosho county, Kansas, as prayed for in the petition, and is further entitled to the funds impounded by the contract set out in finding of fact number 12."

Defendants moved the court to make additional findings of fact; this was denied. Defendants then moved to set aside findings of fact 3, 4, 5 and 9 as not being supported by the evidence and as being contrary to the evidence, and also to set aside conclusions of law numbers 1, 2 and 3 as not being supported by the facts and as being contrary to law. This motion was overruled.

Without summarizing the evidence, we deem it sufficient to say that we have examined the evidence carefully and considered all appellants have said concerning it, and find it sufficient to support the respective findings made by the court.

Appellants contend (1) that the alleged oral contract is too indefinite, uncertain and vague to warrant a decree of specific performance; (2) that the contract for the alienation of the homestead is void because it does not have the consent of Maude Wycoff, wife of W. H. Wycoff, and certainly not their joint consent as required by law; (3) that the contract in the instant case is void for the reason that it is in violation of the statute of frauds, and that insufficient facts are proved to take it out of the statute; (4) that appellee is not in equity and in good conscience now entitled to a decree of specific performance on account of his laches; (5) appellee is in default himself, and is therefore not entitled to a decree of specific performance; and (6) that the decree of the court for specific performance is inequitable and unjust.

The uncertainty in the contract largely relied upon by appellants relates to the time of the payment of the $2,000. Plaintiff alleged that this was to be paid in cash. He testified: "Mr. Wycoff was to pay me $2,000 in money, . . . or to give me his note or take a little time. . . . He was to pay me at least in three months, or if not I was to give him a renewal time of three months."

In *Leis v. Sinclair*, 67 Kan. 748, 74 Pac. 261, it was said:

"Ordinarily where there is a stipulation in an executory contract to do some act, and the time of performance is not specified, it is to be done within a reasonable time; and therefore the want of a stipulation to that effect does not necessarily render the contract void." (Syl. ¶ 2.)

In *Wilson v. Beaty*, 211 S. W. 524 (Tex.), it was held:

"The certainty required in a contract which renders it subject to an action for specific performance is a reasonable certainty, and the equitable rule would not require a strained and unreasonable construction of the contract solely for the purpose of defeating the remedy and destroying the right." (Syl. ¶ 4.)

"A contract is certain and definite in its terms if it leaves no reasonable doubt as to what the parties intended and no reasonable doubt of the specific thing equity is called upon to have performed." (Syl. ¶ 3.)

In *Caplan v. Buckner*, 123 Md. 590, it was held:

"The agreement did not specify the time in which the mortgage for $1,000 was to be made payable, but that does not render the terms of the contract too indefinite within the rule referred to. In *Triebert v. Burgess*, 11 Md. 452, the court said: 'Another objection to the contract is, that it cannot be specifically enforced, because it is too indefinite, inasmuch as no time is limited for the payment of the mortgage; and as the parties have agreed upon none the court cannot undertake to fix it. Such an objection is not a valid one. In *Farrell v. Bean*, 10 Md. 233, this court said: 'When no particular time of payment is limited in a mortgage, it is to be paid in a reasonable time. And if payment is not so made, the mortgagee is entitled to a foreclosure.' That case is cited and approved in *Lawson v. Mullinix*, 104 Md. 156, where the court held that when no time is fixed for the consummation of a contract a court of equity will require it to be consummated in a reasonable time. The mortgage which was prepared by the authority of the defendant to carry out the terms of the agreement in this case was made payable one year after date, and no objection was made to it on that account." (p. 602.)

In *Martin v. LaBoon*, 116 S. C. 97, it was held:

"An oral contract for the sale of land held not too indefinite as to terms of payment in view of certain specific provisions, and the rule that, when no specific maturity date is fixed by contracts, payment will be presumed due within a reasonable time or on demand, so that such objection should not prevail, the contract being sufficiently definite in other respects." (Syl. ¶ 4.)

In *Luczak v. Mariove*, 92 N. J. Eq. 377, it was held:

"Where necessary, in the absence of definite terms in the contract, the court will presume it to have been the intention of the parties that a mortgage to be made shall be made payable on demand, and also that the interest rate shall be the legal rate.

"The omission of a due date for a mortgage and the rate of interest thereon will not defeat specific performance of a contract." (Syl. ¶¶ 3, 4.)

The time of payment in this case was reasonably definite, and in view of the authorities above cited and the transaction in this case as a whole it is not so uncertain as to preclude specific performance. It is also argued that the contract is uncertain as to the kind of deed to be given, but when that is not mentioned a deed with the usual

covenants of warranty is presumed. (*Putnam v. King,* 96 Kan. 109, 150 Pac. 559.)

Appellants argue that there was not shown the joint consent of husband and wife necessary for the alienation of the homestead. The joint consent of husband and wife, when that relation exists, is necessary for the alienation of the homestead. Our constitution so provides (art. 15, § 9) and this court has repeatedly so held. (*Morris v. Ward,* 5 Kan. 239; *Ott v. Sprague,* 27 Kan. 620; *Jenkins v. Simmons,* 37 Kan. 496, 15 Pac. 522; *Bank v. Duncan,* 87 Kan. 610, 125 Pac. 76.) But the consent of the spouse in whom the title is not vested need not be in writing. (*Dudley v. Shaw,* 44 Kan. 683, 24 Pac. 1114; *Matney v. Linn,* 59 Kan. 613, 54 Pac. 668.) It may be shown by acts *in pais.* (*Sullivan v. Wichita,* 64 Kan. 539, 68 Pac. 55.) Probably no greater amount of evidence or more strict proof will be required than is deemed necessary to establish any other material fact. (*Pilcher v. A. T. & S. F. Rld. Co.,* 38 Kan. 516, 16 Pac. 945.) It becomes a question of the extent and weight of the evidence. (*Perrine v. Mayberry,* 37 Kan. 258, 15 Pac. 172; *Johnson v. Samuelson,* 69 Kan. 263, 76 Pac. 867; *Shay v. Bevis,* 72 Kan. 208, 83 Pac. 202; *Smith v. Kibbe,* 104 Kan. 159, 178 Pac. 427; *Ferguson v. Nuttleman,* 110 Kan. 718, 205 Pac. 365.) This, in the first instance, is a question for the trial court to determine. We pass upon it only to see if there is some substantial evidence to sustain the conclusion reached. While in this case the evidence of the joint consent of the husband and wife is meager, we cannot say there is no substantial evidence to support the trial court's finding.

Appellants contend that facts were not shown sufficient to take the case out of the statute of frauds. The court finds that defendants surrendered possession to plaintiff May 11, 1922, and never claimed any ownership or rights of possession thereafter until defendant attempted to call the deal off in May, 1923; that defendant gave plaintiff the keys to the house, and that plaintiff paid the taxes on the property for the years 1921 and 1922; that he paid the interest on the mortgage which he had assumed, and insurance upon the garage. In March, 1923, plaintiff made a deed for the property to secure a debt, and defendant, at the request of Robinson, agreed to make a deed, but later declined to do so. These matters were sufficient part performance to take the case out from under the statute of frauds and justify the court's first conclusion of law. (*Edwards v. Fry,* 9 Kan. 417; *Durham v. C. C. & M. Co.,* 22 Kan.

232, 247; *Taylor v. Taylor,* 79 Kan. 161, 99 Pac. 814; *Smethers v. Lindsay,* 89 Kan. 338, 131 Pac. 563; *Witt v. Boothe,* 98 Kan. 554, 158 Pac. 851; *Hoppas v. Bremer,* 114 Kan. 609, 220 Pac. 251.)

Appellants argue that plaintiff is not in equity and good conscience entitled to a decree of specific performance because of his laches; that he did nothing toward complying with his part of the contract from the time it was made in March, 1922, until May, 1923, after appellant notified him that the deal which they had discussed was off. What length of time will constitute such laches as to bar recovery in a suit of this character depends upon many circumstances and rests largely in the sound discretion of the chancellor. While there was some apparently unnecessary delay— neither party was hurrying things up to have the deal closed— there is not such delay that this court should say, as a matter of law, bars recovery.

It is argued that appellee is in default himself and therefore is not entitled to a decree of specific performance in this case. It is pointed out that the transfer of the certificates of stock was the sole consideration passing to appellants under the contract as claimed by appellee. Instead of getting his certificates of stock and transferring them to appellant, he delayed. Two months after the contract was made he says he discovered that the certificates representing the shares of stock in one oil company were lost; then he said he would get duplicates, but he never made the necessary affidavit nor gave the bond which the officials of the company required before duplicates would be issued. In March, 1923, he found the lost certificates in the bank at which he did business at Chanute, but he did not offer them to appellant until after appellant had called the deal off in May, 1923. This question is akin to the one last discussed, and was within the sound discretion of the court in view of all the facts and circumstances of the case.

Lastly it is argued that the decree of specific performance is inequitable and unjust in view of the change in values of the respective properties since the contract was made and before the decree was rendered. It is not claimed that the contract was inequitable when made, but that changed conditions later made it so. In 25 R. C. L. 225, the rule is thus stated:

"The hardship of a contract, like all its other qualities, must be judged of at the time it was entered into, not by subsequent events, and the fact that a contract fair when made has become a hard one by the force of changing

circumstances or subsequent events will not necessarily prevent its specific performance."

Finding no error in the record the judgment of the court below is affirmed.

Harvey, J. (dissenting): While I do not agree with the opinion of the court as written in some other respects, I shall discuss but two points: (1) Whether there is any substantial evidence of the joint consent of the husband and wife to the alienation of the homestead, and (2) whether facts were shown that take the case out from under the statute of frauds.

Let us examine the evidence of the trade and Mrs. Wycoff's consent thereto. The plaintiff testified:

"Mr. Wycoff and I met one evening at the Oriental hotel, and having conversation, as we did quite often, and he—to start with, Mr. Reynolds, rather, wanted to trade me his house for this property. Mr. Wycoff came in just then, and he said that, 'Well, I can trade you my house, the Robinson house, for this property.' So we talked a little bit and finally talked business, and I made him a proposition how I would trade. I asked him three thousand dollars to boot between this house—the difference between this house—or this property and this house. And he thought I made him a very fair proposition, but was a little high, and we talked awhile, and finally we traded at two thousand dollars. He was to give me—I was to give him the stock in the two companies, I believe 375 shares in the Great Northern and 135 in the Wapello, and Mr. Wycoff was to give me two thousand—Mr. Wycoff was to pay me two thousand dollars in money, or was to have—to give me his note or take a little time. Now, he was to pay me at least in three months, or if not I was to give him a renewal time of three months more for the two thousand dollars. That was the deal in full. We walked out onto the curb and we spoke of a little agreement—was something said, and we decided it was no need; we were friends, we understood the deal, and it was a deal and that was all there was to it. . . . There was a mortgage on the property for $5,000 that I assumed. . . . Q. At any time after that original transaction concerning this trade or exchange, did you have any conversation with Mrs. Wycoff about the trade, or she with you? A. I was at her house while she was still living there before she moved out. Q. Was that after the trade had been made? A. Yes, sir, after the trade had been made, yes, and had a conversation with Mrs. Wycoff. Q. About this transaction? A. Yes; it was mentioned in our conversation and talked over. Q. In the conversation that you had there with her or in her presence did you learn from her or she from you that such a transaction had taken place? A. Oh, yes. Q. She knew about it? A. Yes. Q. At any time after this transaction with Mr. Wycoff concerning the exchange, did Mrs. Wycoff make any objection to the transaction in any way to you? . . . A. No, sir; she complimented me on the house and said it was a fine home, but she could live and get along with less work in

a smaller house. Q. Did you have any other conversation with her at any time? A. I don't recall I did with Mrs. Wycoff except the conversation on that particular day. . . . Q. Have you given all of the conversation that you have had with Mrs. Wycoff? A. I don't recall ever talking to Mrs. Wycoff after that day, Mr. Jones. Q. That was just the one time in the house? A. Yes, sir."

Plaintiff's son, C. M. Eakin, testified:

"I had a talk with Mrs. Wycoff concerning the transaction, in the presence of my father, Mr. Graham and Mr. Parkin and Mr. and Mrs. Wycoff, and the deal was talked over and she thought they could get another and smaller house, with their family. She did not express any objection or regret."

W. H. Wycoff, on cross-examination, testified:

"At the time this oral contract was entered into between myself and Mr. Eakin I discussed the matter with my wife and told her I was making this trade, and that we had reached an agreement, and told her what the agreement was, as nearly as I could. This was before we moved out of the property, and about the time the agreement was made between me and Mr. Eakin."

Mr. and Mrs. Wycoff moved out of the property in May. Soon thereafter plaintiff's son, C. M. Eakin, asked Mrs. Wycoff for the key to the house. She let him have it on his promise to return it to her, which he did. This is all the evidence in the record of Mrs. Wycoff's knowledge or connection with the transaction.

Our constitution provides (art. 15, § 9) that the homestead cannot be alienated without the *joint consent* of husband and wife. "It cannot be done without such consent. The constitution of the state says so in plain words, and that is the end of all argument." (*Jenkins v. Simmons,* 37 Kan. 496, 505, 15 Pac. 522.) It is not enough to show consent of one at one time and of the other at another time. "It must always be joint and simultaneous." (*Bank v. Duncan,* 87 Kan. 610, 613, 125 Pac. 76.) But this is familiar law in this state. (*Ott v. Sprague,* 27 Kan. 620, 624; *Howell, Jewett & Co. v. McCrie,* 36 Kan. 636, 14 Pac. 257; *Wallace v. Insurance Co.,* 54 Kan. 442, 38 Pac. 489; *Matney v. Linn,* 59 Kan. 613, 54 Pac. 668; *Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567; *Ferguson v. Nuttleman,* 110 Kan. 718, 205 Pac. 365.) It is true both the plaintiff and his son talked with Mrs. Wycoff about the transaction and she made no objection. "This does not prove consent. She was not called upon to object. It was not a case where silence gives consent. No presumption from silence can be indulged by the court which affects adversely the rights of the wife in her homestead." (*Land Co. v. Gas Co.,* 43 Kan. 518, 523, 23 Pac. 630.) "It is the duty of a party who purchases or

contracts to purchase a homestead occupied by the owner and his family to obtain the joint consent of the owner and his wife." (*Thimes v. Stumpff*, 33 Kan. 53, 60, 5 Pac. 431.) This duty plaintiff never performed. Plaintiff did not even tell Mrs. Wycoff what his agreement with Mr. Wycoff was when he talked with her a month or more after his agreement with Mr. Wycoff, which was the only time he had any conversation with her.

"The assent required by the constitution is not a blind action, performed without knowledge or a fair opportunity to know the consequences, but must be an intelligent concurrence on the part of the wife in the conveyance." (*Wallace v. Insurance Co.*, 54 Kan. 442, 453, 38 Pac. 489.) The only evidence that she was ever told by any one was brought out in the cross-examination of W. H. Wycoff, and this does not purport to show that she was asked to, or did, consent to it. All we have in this case is: The husband met a friend at the hotel—they were such good friends that they did not need a contract—and they agreed upon a trade for his homestead. A few days later the husband told his wife what he wanted her to know about it. No one took the trouble to ask her consent; no one testified that she did consent. "The homestead was not intended for the play and sport of capricious husbands merely, nor can it be made liable for his weakness or misfortune. It was not established for the benefit of the husband alone, but for the benefit of the family and of society." (*Morris v. Ward*, 5 Kan. 239, 244.) It is true the consent does not have to be in writing, it may be shown by acts *in pais*, and probably no greater amount of evidence nor more strict proof is required than is deemed necessary to establish any other material fact. When evidence of this character is resorted to it must be sufficient to relate back, and show a consent on her part at the time of the contract in question. (*Johnson v. Samuelson*, 69 Kan. 263, 76 Pac. 867.) Otherwise the consent of husband and wife would not be joint and simultaneous. The only acts Mrs. Wycoff is shown to have done are: (1) She did not object, but, as we have seen, that is not equivalent to a consent. (2) She moved out of the house about May 11. This does not show that she consented in March to an alienation of her homestead, nor even that she was consenting to it at that time. And (3) that she let plaintiff's son have a key to the house on his promise to return it to her, which he did.

In my judgment this is inadequate to support the court's finding

No. 5. Defendant's motion to set that aside should have been sustained. In this connection it should be noted that plaintiff had no contract of any kind, either in writing or in parol, with Mrs. Wycoff; he does not pretend to have had any agreement with her. It seems elementary that one cannot obtain specific performance of a contract against a person with whom he has had no contract.

Passing to the question of part performance, the findings of the court are that plaintiff never moved into the property nor rented it; he paid taxes upon the property, interest on the mortgage thereon, and the premium on an insurance policy on the garage; he made a deed to the property to Robinson, as security for a debt; his son received for him two keys to the house. This is all the findings show that plaintiff did toward taking possession of the property or paying therefor. Defendants requested the court to find that plaintiff had made no valuable improvements upon the property. This request was refused, but since the court did not find that plaintiff made valuable and lasting improvements thereon, the result is the same. When a case is tried to a court and he is requested to make findings of fact he is presumed to make findings upon all facts established by proof and upon which the judgment is based. (*Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264; *Snodgrass v. Carlson,* 117 Kan. 353, 232 Pac. 241.) Defendants requested the court to find that when W. H. Wycoff delivered two keys for the house to plaintiff's son he retained a full set of keys for the house and that he delivered them to Mr. Bray at the time of the contract with him. This request was refused. I am unable to see why this requested finding was not made. It was testified to by two witnesses and was not controverted by any witness, and it has an important bearing upon whether there was, or was intended to be, a complete delivery of possession to plaintiff. The delivery of keys to a prospective buyer does not necessarily mean the delivery of possession. (*Shepard v. Niles,* 125 Atl. 669 [Del. Ch.].) There is no finding of the court that the plaintiff, or anyone on his behalf or by his authority, ever went into, upon or about this property after defendant moved out of it. The only consideration passing from plaintiff to W. H. Wycoff under their parol agreement was the certificates for the shares of stock in the two oil companies. These were never delivered, nor were they tendered by plaintiff until in June, 1923, about fifteen months after the parol agreement and about a month after W. H. Wycoff had written plaintiff calling the deal off.

Eakin v. Wycoff.

From these findings the court concluded, as a matter of law, "that plaintiff had the exclusive and continuous possession" of the real property since defendants moved out of it in May, 1922. Obviously, this is an erroneous conclusion. The property was vacant and unoccupied during that time; it was not in the actual, open, notorious possession of anyone. The constructive possession of vacant and unoccupied property is in the person in whom the title is vested. As between vendor and vendee of an executory contract for the conveyance of real estate, in the absence of any provision in the contract as to when possession shall be delivered (and there was none in the parol agreement in this case), the right of possession is in the vendor (*Gildehaus v. Whiting,* 39 Kan. 706, 18 Pac. 916) until the deed is delivered (*Barker v. Denning,* 91 Kan. 485, 138 Pac. 573). See note 28 A. L. R. 1069, where the many authorities on this question are collected. So, as a question of law, the constructive possession was in defendant.

If by any process of reasoning it can be said, from the court's findings, that plaintiff had the constructive possession of the property after defendants vacated it, that would avail the plaintiff nothing, for constructive possession is not the character of possession which could justify or authorize a court of equity to decree the specific performance of a parol contract for the conveyance of lands, unenforcible under the statute of frauds.

"There must be an actual and notorious, and not merely a constructive, possession. A mere technical possession, not open to the observation of the neighborhood, is insufficient." (36 Cyc. 668, and cases there cited.)

Possession to be sufficient to sustain a suit for specific performance of a parol contract must be actual, open, notorious, exclusive and continuous under the delivery of the plaintiff. Constructive possession of vacant town lots is not sufficient. Such possession remains with the legal title. (*Development Co. v. Thornburg,* 46 W. Va. 99.)

"A mere symbolical or constructive change of possession will not suffice, for that would not lay the trespassers liable to an action for trespass." (*Treat v. Ellis,* 6 Alaska, 290, syl. ¶ 5.)

"A mere technical possession, not open to the observation of the neighborhood, is insufficient." (*Boese v. Childress,* 83 Okla. 60, 63.)

This necessarily follows when we consider the reasons which prompt courts of equity in some cases to decree the specific performance of contracts of this character, which we shall now examine.

In *Edwards v. Fry,* 9 Kan. 417, 422, it was said:

"A parol contract to sell land, as a contract, is always void, not because of any immorality or illegality, it is true, but because the law does not recognize such method of transferring title to real estate. Part performance takes such a case out of the statute of frauds, not because it furnishes any greater proof of the contract, or because it makes the contract any stronger, but because it would be intolerable in equity for the owner of a tract of land to knowingly suffer another to invest time, labor and money on that land upon the faith of a contract which did not exist. Part performance, working injury to one party, unless followed by full performance, is necessary to enforce performance by the other. Equity bases its right to interfere upon the ground that without its interference injury and wrong will result, and not on the ground that it is morally right that men should perform their contracts."

In *Nay v. Mograin*, 24 Kan. 75, 80, it was said:

"Part performance does not make the parol contract any stronger or more binding. It is still a contract which the statute declares inoperative to transfer title. Equity has interfered in cases of part performance to prevent one party from leading another on to the expenditure of labor and money in the melioration of an estate upon the faith of an agreement, and then denying the agreement."

In *Baldridge v. Centgraf*, 82 Kan. 240, 244, it was said:

"The ground upon which a court, notwithstanding the statute of frauds, may compel the complete performance of an oral contract for the sale of real estate, which has been partly performed, is that such a decree may be necessary in order to avoid injustice toward one who in reliance upon the agreement has so altered his position that he can not otherwise be afforded adequate relief. His mere entry into possession with the consent of the owner does not in and of itself meet this condition. It does not make him a trespasser in fact, and a decree of specific performance is not necessary to protect him from liability as such. Nor does it in and of itself place him at any disadvantage or involve him in any loss. True, whenever he has made permanent improvements upon the property the courts are ready to order a conveyance, even although it might be possible to provide compensation in damages. A sufficient reason for this is that alterations in the artificial features of real estate are so largely a matter of individual taste that the loss to their designer in being deprived of their benefit might not be adequately measured, either by the increased value of the property or by his expenditures in making them. And whenever possession is taken under such circumstances that its relinquishment involves a disadvantage, apart from the mere loss of the benefits of the bargain, a case may be presented for equitable relief, dependent upon the special circumstances."

In *Engelbrecht v. Herrington*, 103 Kan. 21, 24, 172 Pac. 715, it was said:

"The general rule is that every parol contract concerning lands is within the statute of frauds and perjuries and unenforceable except where the performance cannot be compensated in damages."

Based upon the reasons above stated, the question arises, What will constitute sufficient partial performance, on the part of the vendee, with the knowledge and consent of the vendor, of a parol contract to convey land, unenforceable under the statute of frauds, to authorize or justify a court of equity, in order to prevent a fraud upon the vendee, to decree a specific performance of the contract?

Three elements are usually considered: (1) payment, or part payment, of the purchase price; (2) possession; (3) the making of lasting and valuable improvements. Our court has held that payment alone is not sufficient, for the amount paid may be readily ascertained and can be recovered in damages (*Baldwin v. Squier*, 31 Kan. 283, 284, 1 Pac. 591; *Goddard v. Donaha*, 42 Kan. 754, 22 Pac. 708); that possession alone is not sufficient (*Baldridge v. Centgraf*, 82 Kan. 240, 108 Pac. 83), though in some earlier cases (*Edwards v. Fry*, 9 Kan. 417, 423; *Durham v. C. C. & M. Co.*, 22 Kan. 232, 247) there is dicta to the effect that possession alone is sufficient, on the theory that the vendee, by going into possession, may have rendered himself liable for trespass. That could never be true, of course, unless the vendee went into actual possession. Hence constructive possession has never been regarded as sufficient. The English rule is that actual possession is sufficient (36 Cyc. 652); in this country the rule has been sometimes followed, but in many of the states it is repudiated (36 Cyc. 654; *Bell v. Anderson*, 292 Ill. 605).

The making of lasting and valuable improvements, which, of course, includes possession, is sufficient. This is because such improvements enhance the value of the estate in a sum which cannot be estimated accurately. (*Galbraith v. Galbraith*, 5 Kan. 402, 409; *Holcomb v. Dowell*, 15 Kan. 378; *Flanigan v. Waters*, 57 Kan. 18, 45 Pac. 56; *Crane v. Cheney*, 77 Kan. 815, 91 Pac. 67.) Payment and improvements, where vendee was already in possession, was held sufficient in *Edwards v. Fry*, 9 Kan. 417, and of course payment, possession and improvements are sufficient. Payment and possession were held sufficient in *Witt v. Boothe*, 98 Kan. 554, 158 Pac. 851, and *Hoppas v. Bremer*, 114 Kan. 609, 220 Pac. 251, but were held insufficient in *Baldwin v. Baldwin*, 73 Kan. 39, 84 Pac. 568, and *Baldridge v. Centgraf*, 82 Kan. 240, 108 Pac. 83.

When the vendee has not made lasting and valuable improve-

ments, and when possession is relied upon, either alone or in connection with payments, the character of the possession is of the highest importance.

"But to take a parol contract for the sale of land out of the statute of frauds by reason of a delivery of possession, such possession must be notorious, exclusive, and obviously in pursuance of the contract." (*Baldwin v. Squier,* 31 Kan. 283, 284, 1 Pac. 591.)

"A possession, to be effective and to take an oral contract out of the statute of frauds, not only must be actual, notorious and exclusive, but it must have been taken and held in pursuance of such contract." (*O'Brien v. Foulke,* 69 Kan. 475, syl. ¶ 1, 77 Pac. 103.)

"It must be notorious, exclusive, continuous, and in pursuance of the contract." (*Baldwin v. Baldwin,* 73 Kan. 39, syl. ¶ 1, 84 Pac. 568.)

"Where it is sought to enforce a parol contract to convey lands, and possession is relied upon as part performance, the rule that the possession must be exclusive is satisfied where it is shown that the possession was as exclusive as the terms of the contract would permit." (*Taylor v. Taylor,* 79 Kan. 161, syl. ¶ 1, 99 Pac. 814.)

The payment of interest on the mortgage assumed is at best only a payment of a part of the purchase price. (*Clegg v. Brannan,* 111 Tex. 367.) The payment of taxes of 1921 was not incumbent upon plaintiff under his contract as testified to by him, and the payment of other taxes and of insurance may be readily ascertained in amounts and recovered in damages. Hence these matters are insufficient part performance. As we have seen, constructive possession means nothing as part performance, but in my judgment the plaintiff did not have as much as constructive possession. The judgment should be reversed with directions to enter judgment for defendants.

BURCH, J., joins in this dissent.